Oral Argument Not Requested

No. 06-15-00062-CV

RECEIVED IN
The Court of Appeals
Sixth District

NOV 2 4 2015

Texarkana, Texas
Debra Autrey, Clerk

In The

Court Of Appeals

For The

Sixth Supreme Judicial District

Texarkana, Texas

FILED IN
The Court of Appeals
Sixth District

NOV 2 4 2015

Texarkana, Texas
Debra K. Autrey, Clerk

Allen "F" Calton

V

Steve Schiller, Sharon Keller
Terrie Livingston, Louis Sturns

APPEAL From The 153rd
Judicial District Court, Judge Susan McCoy Tarrant
County, Texas

APPELLANT'S BRIEF

Allen "F" Calton #1123880
Stiles Unit
3060 Fm 3514
Beaumont, Tx. 77705
Pro Se

## Identity Of Parties and Counsel

The following is a complete list of all parties, as well as the names and addresses of all counsel.

Appellant

Trial Counsel

Appellate Attorney
For Appellant

Appellees

Trial Attorneys For
Appellees

Appellate Attorney
For Appellees

Allen "F" Calton
Pro Se Plaintiff

Prose Appellant

Steve Schiller, Sharon Keller
Terrie Livingston, Louis Sturns

David A Harris
Assistant Attorney General
300 W. 15th st.
Austin, Tx 78701

Christopher Ponder
Tarrant County Assistant District Attorney
401 W. Belknap st.
Fortworth, Tx. 76196

Demetri Anastasiadis
Texas Attorney General
300 W. 15Th st.
Austin, Tx. 78701

# Table of Contents

page

Identity Of Parties and Counsel . . . . . . . . p. i

Table Of Contents . . . . . . . . . p. ii

Index of Authorities . . . . . . . . p. iv

Points About Appellant's Brief, Record References and
The Number of Clerk's Record . . . . . p. 1

Statement Of The Case . . . . . . . . p. 3

Issues Presented . . . . . . . . p. 2

Statement Of Facts . . . . . . . . p. 3

Summary Of The Argument . . . . . p. 7

Appellant's First Point Of Error

The Trial Court erred in granting steve schillers motion
To Dismiss Appellant's Claims under § 1983 . . . . p. 9

Appellant's second Point Of Error

The Trial Court erred in granting steve schillers
motion To Dismiss Appellant's state Common Law claims . . p. 22

Appellant's Third Point Of Error

The Trial Court erred by Failing To Appoint Counsel For The
mentally ill Appellant. To Ensure the proceeding Remained Adversarial
and whose liberty is at stake . . . . . . . . . . p. 29

Table of contents page ii

# Table Of Contens

page

## Appellant's Fourth Point Of Error

The District Court erred by denying Calton's Civil Injunctive Relief Request on his § 1983 Claims due to the extraordinary and exceptional circumstances of the instant case and the complete failure of the system i.e. Calton has no other adequate remedy at law. Although it is undisputed Calton's Constitutional Rights were violated . . . . . . . p. 35

## Appellant's Fifth Point of Error

The Trial Court erred by not reopening the case to consider Calton's claims in light of the Ninth Amended Complaint that was timely filed pursuant to the prison mailbox rule and due to Calton sought leave to amend and there was no showing of surprise or prejudice . . p. 45

## Appellant's Sixth Point Of Error

The Trial Court erres in granting the Defendant Judges motion To Dismiss For Lack of Subject Matter Jurisdiction . . . p. 49

Prayer . . . . . . . . p. 50

Certificate of Service . . . . . - p. 50

Table Of Contents page III

# Index of Authorities

cases                                                                    pages

America Petrofina Inc v Allen 887 sw2d 829 (Tex 1994) . . . p. 47

Amoco Prod. Co. v Village of Gambell 480 U.S. 531 (1983) . . . p 36

Armstrong v Randle 881 sw2d 53 (Tex App. Texarkana 1994 writ den'd) . p 34

Ballantyne v Chapman Builders, Inc 144 sw3d 417 (Tex 2004) . . . p. 24,25

Ex Parte Banks 769 sw2d 539 (Tex Crim App 1989) . . . . . . p. 39

Bannercroft Clothing Co. v Renegotiation Board
466 F2d 34 (O.C.Cir 1972) . . . . . . . . . . p. 40,41

Barker v Wingo 407 U.S. 514 (1971) . . . . . . . . p. 39,40,47

Bowler v State 822 sw2d 334 (Tex. App San Antonio pet ref'd) . . p.38

Brandon v Holt 469 U.S. 469 (1985) . . . . . . . . . p. 25

Brewer v Collins 857 sw2d 819 (Tex App Houston[1st Dist] 1993, no writ) . p. 29

Brown v Aetna Cas. and Sur. Co. 145 sw2d 171 (1940) . . . . . p. 9,22

Bryant v Jeter 341 sw3d 447 (Tex App. Dallas 2011 no. pet) . . . p.46

Caldwell v Amend 30 F3d 1199 (9th Cir 1994) . . . . . . . p.45

Carson v Johnson 112 F3d 818 (5th Cir 1997) . . . . . . . p.15

Chapman and Chapman v Texas Sand and Gravel Co. Inc
844 sw2d 664 (1992) . . . . . . . . . . . p. 47

C.H. Leavell and Company v Leavell Company
570 sw2d 404 (Tex. Civ. App El Paso 1978 no writ) . . . . p.44

City Of Beaumont v Bouillion 896 sw2d 143 (Tex 1995) . . . . p.38

# Index of Authorities

**Cases**                    Pages

City of Lancaster v Chambers 883 sw2d 650 (1994) . . . . . . p.24

Clark v Stadler 154 F3d 186 (5th Cir 1998) . . . . . p.11,12,13,14

Cloud v McKinney 228 sw3d 326 (Tex App. Austin 2007) . . . p.24

Clutchette v Procunier 497 F2d 809 (9th Cir 1974) . . . . -p.16,17

Conley v Gibson 385 U.S. 41 (1957) . . . . . . . . -p.10,23

Cook v TOCJ Trans. Plan. Dept. 37 F3d 166 (5th Cir 1994) . . -p.16

Cooper v Pate 378 U.S. 546 (1964) . . . . . . . -p.21

Cortez Indus Inc v Sun Holding L.P. 949 F2d 42 (2d Cir 1991) . . p.1

County of Cameron v Brown 80 sw3d 549 (Tex 2002) . . . p.50

Dallas County v Halsey 87sw3d 552 (Tex 2002) . . . . . p.25,27

Deerfield Med Ctr. v City of Deerfield Beach 661 F2d 328 (5th Circuit 81981) . p39

Donizio v Progressive County Mut. Ins. Co
54 sw3d 867 (Tex. App. Austin 2000, pet den) . . . . - .p.49

Downer v Aquamarine Operators Inc 701 F2d 238 (Tex 1985) . p.29

Draper v Washington 372 U.S. 487 (1963) . . . . . -p.41,42

e Bay Inc v MecExchange LLL 547 U.S 88 (2006) . . . - p.36

Edwards v Balisok 117 S.Ct 1584 (1997) . . . . . p -11,12,17,18, 21,22

Elrod v Burns 427 U.S. 347 (1976) . . . . . . - -p.39

Ex Parte Evans 942 sw2d 643 (Tex. Crm App. 1998) . . . -p.20

Evitts v Lucey 105 S.Ct 840 (1985) . . . . . . . . -p.41,42

# Index of Authorities

cases             pages

Faile v Upjohn Co. 988 F2d 989 (4th Cir 1993) . . . . . . . p.45

Forrester v White 484 u.s. 219 (1988) . . . . . . . p.28

Garcia - maroquin v Nueus County Bail Bond Bd
1 sw3d 366 (Tex App. Corpus Christi no pet'h ) . . . . -p.36

Gaurell v Rodriguez 225 sw3d 758 (Tex. App [14th Dist] 2007) . . -p.31

Georgevich v strauss 772 F2d 1078 (3d Cir 1985 ) . . . . . p.16

Gerstein v Pugh 420 u.s. 103 (1975) . . . . . . . p.17

Gibson v Tolbert 102 sw3d 710 (Tex 2003) . . . . - p. 29,30,32,34

Go. Daddy .Com LLC v Toups
2014 WL 1389776, at *2 (Tex App Beaumont April 10, 2014) no pet, h.) . p.1

Goswani v metropoliton Sav and Loan Ass'n 751sw2d 487 (Tex 1988). p46

Guerreque v Thompson 952 sw2d 458 (Tex. App. El Paso 1997 ) . . p.46,47

Haines v Kerner 404 u.s. 419 (1972) . . . . . . . . p. 8, 23

Haq v America's Favorite Chicken Co.
921 sw2d 728 (Tex. App. corpus Christi 1996, writ dismissed. w.o.J ) . p 37

Hardin v Hardin 597 sw2d 347 (Tex 1980) . . . . . p. 47

Harris v state 818 sw2d 231 (Tex. App San Antonio 1991 no pet ) . . p.38

Hatch v Davis 621 sw2d 443 (Tex Civ App Corpus Christi , writ ref n.re) p. 27

Heck v Humphrey 512 u.s. 477 (1994) . . . . . . p 11,16,19, 20, 21

# Index of Authorities

cases                                                                                  pages

Holobec v Bradenberger 214 sw3d 650 (Tex App. Austin 2006) . . p.37,38

Holland Am Ins. Co v Succession of Roy 777 F2d 992 (5th Cir 1985) . . p. 39

Hosey v County of victoria 832 sw2d 701 (Tex App. Corpus Christi 1992) . p.34

Houston v Lack 487 U.S. 266 (1980)   .   .   .   .   .   . . . p.45

Hudson v whitley 979 F2d 1058 (5th Cir 1995) . . . . . . . p.43

Ex Parte Hughes 129 sw2d 270 (1939) . . . . . . . . p.44

In re Humphreys 880 sw2d 402 (Tex..op.on Reh's ) . . . . p. 9, 22

Jackson v Shinnit 881 sw2d 498 (Tex App. El paso 1994, no writ ) . p.24

Johnson v Fourth Court of Appeals 700 sw2d 916 (Tex. 1995) . . p.29

Johnson v State 151 sw3d 193 (Tex. Crim App. 2004 ) . . p.30,45

Jimenez v State 307 s w3d 325 (Tex. App. San Antonio 2009) . . p.39

Kennedy v Staples 336 s w3d 745 (Tex. App. Texarkana 2011) p. 43,44

Langdale v Villamil 813 sw2d 187 (Tex App. Houston [14th Dist 1991 no pet) . p.1

Lassiter v Dep't of Social Servs. 452 U.S.18 (1981) . . . . p30

Leal-Garcia v Quarterman 573 F3d 214 (5th Cir 2009) . . . p.31

Lee v Bickell 292 U.S. 415 (1934) . . . . . . p. 37

Lewis v Baune 534 F2d 1115 (5th Cir 1976) . . . p.37,40

# Index of Authorities

Cases             pages

In re Logan 2003 Tex. App. Lexis 4499 . . . . . . . . p.16

Mathis v Hood 937 F2d 790 (2nd Cir 1991) . . . . . . p.39,48

Mayer v City of chicago 404 u.s. 189 (1971) . . . . . p.41

Middaugh v State 683 sw2d 713 (Tex. Crim. App. 1985) . - p.38

Mireles v Waco 502 u.s. 9 (1991) . . . . . . . p.28

Monk v Secretary of The Navy 793 F2d 364 (D.C. 1986) . - p.17

Morris v Dearborne 181 F3d 657, (5th Cir 1999) . . . - p.37

Muhammad v Close 540 u.s. 749 (2004) . . . . . . - p.20,21

Nelson v Kruser 678 sw2d 918 (Tex 1984) . . . . - . p.41

NMTC Corp v Canafroe 99 sw3d 865 (Tex. App Beaumont 2003) . p.40

Nueces County v Ferguson 97 sw3d 205 (Tex. App Corpus Christi 2002 no pet) . p23,24

Offet v Solem 823 F2d 1256 (8th Cir 1987) . . . . . - p.21

Orellan v Kyle 65 F3d 29 (5th Cir 1995) . . . . . p.15,17

O'shea v Littleton 414 u.s. 488 (1974) . . . . . . - p.40,48

Ex Parte Owenby 749 sw2d 880 (Tex Crim App. 1988) . . p.39

Pierre v United States 525 F2d 933 (5th Cir 1976) . . - p.11

Pickell v Brooks 846 sw2d 421 (Tex. App Austin 1992 writ den). p25,28

Preiser v Rodriguez 411 u.s. 475 (1973) . . . . . - p.10,15,17,18,19

# Index Of Authorities

Cases                                                        pages

Public Utility Comm'n. v Cofer 754 sw2d 121 (Tex. 1988) . . p. 34

Pulliam v Allen 466 U.S. 522 (1984) . . . . . . p.49

Qualls v Shaw 535 F2d 318 (5th Cir 1976) . . . . p.14,15

Reihert v Haas 585 F.Supp 789 (N.D.Iowa 1980) . . . . p.42

Rheuark v Shaw 547 F2d 1257 (5th Cir 1977) . . . . . p.14,31

Rheuark v Shaw 628 F2d 297 (5th Cir 1980) . . . . . p.39,48

Routier v State 112 sw3d 554 (Tex. Crim App 2003) . . . . p.39

Ex parte Sadberry 864 sw2d 541 (Tex Crim App. 1993) . . . p.58

Scott v Gallagher 209 sw3d 262 (Tex App Houston [1st Dist 2006, no pet].p.9,22, 23

Serio v members of Louisiana state Bd. of Pardons 821 F2d 1112 (5th Cir 1987)p.12,13

Spartacus Youth League v Bd. of Trustees 502 F.Supp. 789 (N.D.Ill 1980) . . p.42

State v Lain 349 sw2d 579 (Tex 1961) . . . . . . p.25

state v Texas Pet Food, Inc 591 sw2d 800 (Tex. 1979) . . . . p.35

State Bar of Texas v Kilpatrick 874 sw2d 656 (Tex 1993) . . . p.47

State Dept. Hwys and Pub.Transp. v Gonzalez 82 sw3d 322 (Tex 2002) . p.49

Stone-Bey v Barnes 120 F3d 718 (7th Cir 1997) . . . . . p.47

Stumps v sparkman 435 U.S. 339 (1978) . . . . . p.58

# Index Of Authorities

Cases                                                                   pages

Swann v charlotte - mecklenberg Bd. of Educ 402 u.s. 1 (1976) . p 44

Taylor v Books A million Inc 296 F3d 376 (5th cir 2002) . . . p.48

Taylor v United States Prob. office 409 F3d 426 (D.C. 2005) . . p.11

Teague v Lane 489 u.s. 288 (1989) . . . . . . - p.20

Terrell ex rel Estate of Terrell v sisk
111 sw3d 274 (Tex. App. Texarkana 2003) . . . . . p25,28,29

Texas A and m v Koreglue 233 sw3d 835 (Tex 2007) . . - p.24,50

Texas Health Case Infor. Coun v Seton Health Plan Inc
94 sw3d 841 (Tex. App Austin 2002) . . . . . . p.40

Texas parks and wildlife Dep't v E.E. Lowery Realty, Ltd
155 sw3d 456, 458 (Tex. App. waco pet filed) . . . p.24

Ex Parte Tovar 901 sw2d 484 (Tex. crm App. 1995) . . - . . p.39

Ex parte Trainer 181 sw3d 358 (Tex crm App. 2005) . . . . p.41

Traveler's Iden Co V mayfield 923 sw2d 590 (Tex 1996) . p.30,32,33

Turner v Rogers 131 s.ct 2507 (2011) . . . . - . p.30

Twilligear v Carrell 148 sw3d 502 (Tex. App Houston [14 Dist] 2004) p.28

walling v metcalfe 863 sw2d 56, 57 (Tex. 1993) . . . - . p.36

warner v Glass 135 s w3d 681 (Tex 2004) . . . . - . p. 45

Index Of Authorties page X

# Index of Authorities

pages

### Cases

United States ex rel Willard v Humana Health Plan of Tex.Inc. 336 F3d 375 (5th Cir 2003) . . . . . . - - p.1

Wilkinson v Dotson 125 S.ct 1242 (2005) . . . p.18,19,20,21,22

Williams v Compressors Eng's Corp.70 704 sw2d 469 (Tex App. Houston [14th Dist] 1989 writ ref'd n.e.) . . p.37

Wolff v mcDonnell 418 U.S. 539 (1974) . . . . . . - . p.18,19,20,21

Ex parte Young 209 U.S. 123 (1908) . . . . . . - - p.40

### U.S. Constitutional Amendments

U.S. Const Amend VI . . . . . . . . - . . p.29
U.S. Const Amend XIV . . . . . . . p-14 18,34,42,48

### Federal Codes, Rules and Statutes

Fed R.Crim.P. Rule 32(K)(1) . . . . . . - p.20

18 U.S.C. § 3626 (a) . . . . . . . p 42

28 U.S.C. § 2244 . . . . . . . - .p.10

28 U.S.C § 2244 (b)(2)(B) . . . . . p.38

28 U.S.C. § 2244 (b)(3)(C) . . . . . - p.38

# Index of Authorities

Cases                                                                    pages

28 U.S.C § 2254 . . . . . . . . . . p. 10

42 U.S.C. § 1983 . . . . p. 2,10,13, 16,18,19,20,21, 22,25,31, 35,38,42

42 U.S.C. § 1997 e (e) . . . . . . . . . . . p.38


## Texas Codes, Rules, and Statutes

Tex. Gov't Code § 24.016 . . . . . . . . - p.16

Tex. Civ. Prac. Rem Code § 101.021 . . . . . - p.23

Tex. Code Crim Proc Art 11.07 §4 (a) . . . . . - p.35

Tex Code Crim Proc Art 42.01 (1) . . . . . -p.20

Tex. R. Civ P. Rule 63 . . . . . . p.46,47

Tex. R. App. P. Rule 33.1 . . . . . . p. 46

Tex. R. App. P. Rule 34.6 (e)(3) . . . . . -p.30

Tex. R. App. P. Rule 34.6(f) . . . . . -p.30,39

Tex. R. App. P. Rule 41.1(a)(1) . . . . . p. 35

<u>Points About Appellant's Brief, Record References and The Number of Clerk's Record</u>

There are three Different Clerk's Record making Up the Record on Appeal, with each containing one volume. The initial Clerk's Record Filed on 9-30-15 will be referred to below as "CR". The First Supplemental Clerk's Record Filed on 9-2-15 will be referred to below as "1st Supp CR". The second Supplemental Clerk's Record Filed on 9-6-15 will be referred to below as "2nd Supp. CR."

Out of an abundance of Caution not Knowing with certainty whether The Eighth or The Ninth Amended Complaint is the Live Pleading. Both will be referred to whenever citations herein are made to the complaint and any exhibit attached thereto. Because in this Court's De Novo Review may consider facts set forth in exhibits attached as part of the complaint as well as those in the complaint itself. See Cortec Indus Inc v Sum Holding L.P. 949 F2d 42, 47 (2d Cir 1991)(noting that a complaint is deemed to include any written Instrument attached to it as an exhibit or any statements or documents incorporated in it by reference). Further the Court in its De Novo review can take Judicial notice of Public Record Documents See Langdale v Villamil 813 SW2d 187, 189-90 (Tex. App. Houston [14th Dist] 1991, no pet)(Taking Judicial Notice of a judgment of disbarment because "the judgment is a matter of public record" and as such, it is capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned). Matters of Judicial notice are properly considered at the pleading stage. Cf United States ex rel Willard v Humana Health Plan of Tex. Inc. 336 F3d 375, 379 (5th Cir 2003) (stating that a court may look to "matters of which Judicial may be taken when considering a motion To Dismiss under Fed. R. Civ. P. 12 (b)(6)); See also Go Daddy.com LLC v Toups ____ SW3d ---- , 2014 WL 1389776, at *2 (Tex. App Beaumont Apr. 10, 2014, no pet.h) (while not identical, Tex. R. Civ. P. 91 A is analogous to Rule 12 (b)(6); therefore we find case law interpreting Rule 12 (b)(6) instructive). Finally the Eighth and Ninth Amended Complaints are indistinguishable with

Appellant's Opening Brief page 1 of 50

the exception of the fact that the Ninth Amended Complaint has the "Barker" factors and elements necessary to state a claim of the excessive retardation and delay of An Effective Appeal. see CR Vol. 1 p. 510-512. which allegations establish there exists a continuing, present adverse effect. Warranting that Calton Receive The injunctive Relief sought herein.

## Statement of The Case

This appeal resulted from a suit seeking damages under state common law claims and injunctive relief under 42 U.S.C. §1983. On 5-21-14 the District Court granted the Defendant Judges Sharon Keller, Terrie Livingston and Louis Sturns motion To Dismiss For Lack of Subject matter Jurisdiction. see CR. Vol. 1 p. 40. On 12-1-14 The District Court Denied Appellant's motion For Appointment Of Counsel. see CR Vol. 1 p. 165. On 6-1-15 The District Court granted steve schiller's motion To Dismiss Pursuant to Chapter 14 of the Civ. Prac. Rem. Code. See CR. Vol. 1 p. 450. On 6-25-15 Calton filed his motion For Leave To Amend and supplement His Pleading with the Ninth Amended Complaint and Supplement To The Ninth Amended Complaint. See 2nd Supp. CR Vol. 1 p. 11-17. On 7-9-15 Calton filed his objection to the Trial Court's Failure To Rule on Calton's motion For Leave To Amend and supplement his Pleading with the Ninth Amended Complaint. see CR Vol. 1 p. 673-674

## Issues Presented

### Issue No. 1.

whether the trial Judge erred in granting Defendant steve schiller's motion To Dismiss Appellant's Claims under §1983

### Issue No. 2

whether the trial Judge erred in granting Defendant steve

Schiller's Motion To Dismiss Appellant's State Common Law Claims

## Issue No. 3

Whether the trial judge erred in denying Calton's motion For Appointment of Counsel.

## Issue No. 4

Whether Calton is entitle to Civil Relief on his Claims under §1983 due to the extraordinary and exceptional circumstances of the instant case and the complete failure of the system.

## Issue No. 5

Whether the trial Court abused its discretion in failing to grant Calton Leave To Amend his Complaint with the Ninth Amended Complaint and for failing to reconsider its judgment in light of the Ninth Amended Complaint.

## Issue No. 6

Whether The Trial Judge erred in granting Defendant Judges Motion To Dismiss For Lack of Subject matter Jurisdiction.

## Statement Of Facts

Prose Appellant, Allen "F" Calton (hereafter Calton or Appellant), re-presented himself in the trial Court in this civil action as well as during the underlying criminal trial. Calton was convicted of attempted murder in Cause No. 0843168 in the 213Th Judicial Court and sentenced to Life Imprisonment on 5-20-04. The trial Court entered its certification of the right to Appeal on 5-20-04. Calton filed his notice of Appeal on 5-20-04 and his motion For Free Reporter's Record and Affidavit of Inability To Pay For Counsel and Reporter's Record. Said motion was granted by the convicting Court on 5-20-04. See CR.Vol.1 Eighth

Amended Complaint (hereafter "8th") at p. 272-275 and Ninth Amended Complaint (hereafter "9th") at p. 537-540, on or about 4-1-05 Calton received a copy of the brief Appellate Counsel Barry Alford (here-after Alford) was going to be filing on Calton's behalf. After reading said brief Calton noticed no references or citations were made to the pretrial hearings. Calton timely notified Mr. Alford of this fact. And requested those transcripts be supplemented to the record on Appeal. See CR Vol.1 "8th" at p. 276 and "9th" at p. 541. Mr. Alford then consulted with Court Reporter Steve Schiller (hereafter Schiller) about the matter. At which time Schiller erroneously stated that the records Calton were inquiring about via Mr. Alford were concerning hearings on different cases and not the attempted murder case. See CR. Vol.1 "8th" at p. 281 and "9th" at p. 545. Calton's Direct Appeal As of Right was subsequently resolved on an insufficient and incomplete record on 11-17-05 by the Second District of Texas Court of Appeals. Appeal No. 02-04-228 CR. Calton filed a writ of Habeas Corpus on 3-16-06 and alleged in Ground # 11 that "Records lost or destroyed were necessary for Appeal". However Relief was denied on this claim Because The Trial Court relied on the misrepresentation Schiller made to the defense as the truth of the matter in Trial Court writ No. C-213-007618-0843168-A, WR-65-590-07. See CR Vol.1 "8th" p. 355-357 and "9th" at p. 620-622 After writing several letters to Alford, Schiller and the trial Convicting court in an attempt to procure the relevant records to no avail. See CR Vol.1 "8th" at p. 235 and "9th" at p. 498. Calton always hesitant to impugn the reputation of a government official was left no choice but to file a complaint with the Court Reporters Certification Board (hereafter C.R.C.B) against Schiller. Due to Schiller's failure to prepare the relevant pretrial hearing records, Id "8th" at p. 235-236 and "9th" at p. 498-499. Which Schiller responded to Calton's Complaint on 3-29-12 and admitted he failed to transcribe relevant pretrial records requested by Calton. Id "8th" at p. 281-282 and "9th" at p. 545-546. The C.R.C.B.

issued its Final order on 12-7-12 finding schiller violated Rule X (a)(4) : Incompetence. Due to schiller's failure to prepare transcripts for pretrial hearings that were properly requested by calton and his failure to make reasonable inquiries about the extent of the record. See CR. vol.1 "8Th" at p. 285-287 and "9Th" at p. 549-551, After receiving schiller's response dated 3-29-12 to Calton's complaint that was made with the C.R.C.B. which calton received on 4-13-12. Calton began filing writs of Habeas Corpus seeking both an out-of-Time-Appeal and/or A New Trial due to his direct appeal was resolved on an incomplete and insufficient record. See WR-65-590-14 through WR-65-59017. However the Court of Criminal Appeals Refuses to take any action on these writs. See CR Vol.1 "8Th" at p. 362 and "9Th" at p. 627. Calton then sought leave from the Fifth Circuit U.S. Court of Appeals to file a successive writ due to the Newly Discovered evidence obtained by Calton on 4-13-12 confirming that his appeal was resolved on an incomplete and insufficient record and the omitted records were necessary for an effective, fair and meaningful appeal. The Fifth Circut denied Calton leave to file a Federal petition on 12-11-13. In U.S.C.A. No.13-11083. See CR. Vol. p."8Th" at p. 360-361 and "9Th" at p.625-626. which establishes that calton has no remedy at law under Habeas Corpus in state on Federal court. Although it is undisputed schiller's incompetent reporting practice in the preparation of records for appeal has deprived Calton of a meaningful appeal. Calton then filed his complaint under §1983 in the District Court seeking Injunctive Relief on 2-20-14. In particular Calton seeks a complete and sufficient record on appeal and an out-of-time-appeal to effectively utilize said record to raise both his Right To Speedy Trial and Brady Violation Claims. Id "8Th" at p. 215-222 and "9Th" at p. 478-485. Calton filed his motion For

Appellant's Opening Brief page 5 of 50

The Appointment of Counsel on 10-21-14. see CR.vol.1 p.140-151. In support of said motion Calton filed an affidavit. see Id at p. 121-139. Calton also filed an affidavit of indigency on 10-21-14 putting the Court on notice that he was too poor to afford to hire counsel, and also forwarded a certified copy of his inmate trust fund account statement confirming a balance of $0.00 in his account. See 1st Supp CR vol.1 p. 4-6 and 2nd Supp CR vol.1 p. 5. Calton is mentally ill and has been diagnosed with major de-pression with psychotic features and is prescribed a substantial amount of psychotropic medications. see CR.vol.1 p.123. Said medications prevents Calton from effectively litigating his claims and protecting his rights. Id at p.123-124. which requires Calton when he can afford to do so to seek assistance from fellow prisoners to prepare and file pleadings. Id at p.124-125. However Calton ran out of money and could not pay fellow prisoners the commissary food items they charge to provide their services and had to sell his food trays for legal assistance. Id at 124-125. and went hungry due to missing multiple meals daily. Id at 124-125. The other alternative Calton had was to miss several doses of his medications in an attempt to prosecute his lawsuit. Id at 125-126. which poses a substantial risk to Calton's safety and well being. Because when Calton misses too many doses of his major depression medication causes him to experience the desire to cut his wrists, have fatalistic thoughts and wanting to die. Id at p.126-127 and 132-139. On 5-29-15 Pursuant To The Prison mailbox rule Calton Filed His Ninth Amended Complaint. see CR.vol.1 p. 536 and p.666. This was two days before the trial court issued its order granting Schiller's motion To Dismiss. Id at p. 450. However for reasons un-be knownst to Calton his Ninth Amended complaint was not file marked

until 6-15-15. Id at 667. On 6-15-15 Calton finally received the Trial Court's orders dated 5-29-15 and 6-1-15 that denied Caltons motion For A preliminary Injunction and granted schiller's motion To Dismiss. See Calton's motion To Amend with facts contained therein sworn to under the penalty of perjury. See 2nd supp CR.vol.1 pp.11-17. Specifically see p.12. Also see said orders. CR vol.1 p. 448 and 450 respectively. At which time Calton prepared and mailed his motion To Amend on 6-15-15. After being put on notice that leave to amend was needed due to filing his Ninth Amended Complaint within seven days of the 6-1-15 hearing date. Id at p.17. Contemporaneously filed with said motion For Leave To Amend Calton filed his letter to the 153rd Court Coordinator. Requesting a hearing date of 6-29-15 on said motion. As well as his Notice of Hearing By Submission for said motion and the order granting said motion. Id at 18-20. Calton also provided the Court coordinator a copy of said motion and the order in compliance with Tarrant County Local Rule 1.06(b). A requisite to obtaining the requested hearing date. Id at p.20. Additionally Calton put the trial court court on direct notice of the filing of said motion and the requested 6-29-15 hearing date. Id at p.20. Calton also demanded that the trial court rule on said motion For Leave To Amend. See CR vol.1 p.628-631. Finally Calton filed and personally forwarded the trial court a copy of his objection to the trial Court's failure to Rule on his motion For Leave To Amend his Complaint with the Ninth Amended Complaint. See CR vol.1 p.673-674

## Summary Of The Argument

Point Of Error One: The Trial court erred in dismissing Calton's claims

under §1983 against Schiller. specifically Calton's claims and the relief sought did not seek to challenge the fact or duration of his confinement. Nor did Calton seek relief that would implicate the validity of his conviction.

Point Of Error Two: The Trial Court erred in dismissing Calton's State Common Law Claims against schiller. specifically Calton sued schiller in his individual capacity. while carrying out his ministerial acts and thus schiller was not entitle to official or sovereign immunity.

Point Of Error Three: The Trial Court erred by Failing To Appoint Counsel For Calton who is mentally ill. who had to miss multiple meals a day and go hungry and/or miss doses of his medications and risk his health and safety in an attempt to prosecute his lawsuit. And whose liberty was at stake.

Point Of Error Four: The Trial Court erred by dismissing Calton's §1983 Claims and denying him Civil Injunctive Relief. Although exceptional and extraordinary circumstances existed and due to there being a complete failure of the system i.e. Calton has no other adequate remedy at law. Although it is undisputed Calton's Constitutional Rights were violated.

Point of Error Five: The trial court erred by not reconsidering Calton's claims under §1983 in light of the Ninth Amended complaint that was timely filed pursuant to the prison mail box rule and due to the fact Calton sought leave to file his Ninth Amended complaint. And due to there was no showing of surprise or prejudice shown by schiller or even an attempt to do so for that matter by schiller.

# Argument and Authority

## Appellant's First Point of Error

The Trial Court erred in granting Steve Schuller's motion To Dismiss Appellant's Claims under § 1983

## Standard Of Review

When, as in the instant case, an inmate lawsuit is dismissed as frivolous for having no basis in law or fact but no fact hearing is held, this Court's review focusses on whether the inmate lawsuit has an arguable basis in law. See Scott v Gallagher 209 sw3d 262, 266 (Tex. App. Houston [1st Dist] 2006, no pet). The issue as to whether a claim has an arguable basis in law is a legal question that is reviewed de novo. See In re Humphreys 880 sw2d 402, 404 (Tex. Op. on. Reh'g) (explaining questions of law are de novo). The scope of review is limited to those arguments raised in the motion To Dismiss. See Brown V Aetna Cas. and Sur. Co. 135 Tex 583, 145 sw2d 171, 174 (1940). In conducting a review of the complaint, this Court must take true the factual allegations in an inmate's petition and review the types of relief and causes of action set out therein to determine whether as a matter of law, the petition stated a cause of action that would authorize relief. See Scott 209 sw3d at 266. A claim has no arguable basis in law if it relies upon an indisputable meritless legal theory Id at 266-67.

Finally this Court is to hold Calton's pleadings to less stringent standards than formal pleadings drafted by lawyers. See Haines V Kerner 404 U.S. 419, 420 (1972), and a claim should not be dismissed unless it appears beyond doubt that a plaintiff

can prove no set of facts in support of his claims which would entitle him to relief. See Conley v Gibson 385 U.S. 41, 45-46 (1957)

## Argument

The instant case lies at the intersection of two fertile sources of Federal Court litigation. The Civil Rights Act 42 U.S.C. § 1983 and Federal Habeas Corpus statute 28 U.S.C. § 2254. Both of these provide access to Federal Forum for claims of unconstitutional treatment at the hands of state officials, but they differ in their scope and operation. In "Preiser" the supreme Court considered the overlap between those two provisions, and held that Habeas Corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though a claim may come within literal terms of § 1983 See Preiser v Rodriguez 411 U.S. 475, 488-490 (1973). The instant case is not covered by the holding of Preiser, for Calton seeks not immediate or speedier release but merely seeks prospective injunctive relief i.e. an equitable order from the trial Court that orders Calton be provided a complete and sufficient record on appeal and an out-of-time-appeal to utilize said record to press his Brady violation and Right to Speedy Trial Violation claims. Calton has no other remedy at law and habeas corpus cannot provide Calton an out-of-time-appeal. In "Preiser" the supreme Court delineated what constitutes a habeas corpus action as opposed to a 42 U.S.C. § 1983 claim.

The Prisoner's label cannot control. The essence of habeas Corpus is an attack by a person in custody upon the legality of that custody. If a prisoner is not challenging the validity of his or her conviction or the length of confinement or detention or the loss of good time credits, the writ of Habeas Corpus is not the proper remedy. It is the substance of the relief sought that counts. See Preiser, supra. where a

prisoner seeks a writ of Habeas Corpus and fails to attack the validity of his or her sentence or the length of his or her custody, the district Court lacks the power of subject matter jurisdiction to issue the writ. Cf. Taylor v United States Prob. Office 409 F3d 426 (D.C. 2005). The Sole function of the writ of Habeas Corpus is to grant relief from unlawful imprisonment or custody, and cannot be used for any other purpose. See Pierre v United States 525 F2d 933 (5th Cir 1976)

The Crux of Schillers Contention in his motion To Dismiss was that Calton claims had no basis in law or fact; and that his claims under §1983 could not be sustained because it necessarily Implicated the validity of his final conviction, per Heck v Humphrey 512 U.S. 477 (1994). See CR. vol.1 p.168-169. Schiller's reliance on "Heck" is misplaced because the relief Calton seeks in his Eighth and Ninth Amended complaints does not call into question or implicate the validity of his conviction or sentence. See CR. vol.1 "8th" at p. 268-270 and "9th" at p. 533-535. Also see "Heck", supra. Schiller's reliance on "Clarke" fairs no better contending that a suit seeking injunctive relief are not cognizable under §1983 if the nature of the relief would implicate the validity of a criminal conviction. See CR. vol.1 p.192. However the instant case is readily distinguishable from "Clark". Because "Clark" was challenging a conviction that stemmed from violation of the "no threats of legal redress" portion of rule 3 - a determination that again would be binding on a state court in a subsequent action - the state court could only conclude that Clarke had been convicted of violating an unconstitutional rule. see clarke v Stadler 154 F3d 186,190 (5th Cir 1998)(enbanc). The Court went on to note that if Clarke's conviction in the disciplinary was based on an unconstitutional rule. It would be the sort of "obvious defect" that, when established results in nullification of the conviction. Id at 190 (Citing Edwards V

Balisok 117 S.Ct 1584, 1588 (1997). And as a result of this the "Clarke" court could not grant him relief because then the state court would have no choice but to strike clarke's punishment and reinstate his good-time, resistance by the state would be an exercise of futility". See Serio v members of Louisiana State Board of Pardons 821 F2d 1112, 1119 (5th Cir 1987).

Clarke's request that the "no threats of legal redress" portion of Rule 3 be declared facially unconstitutional was so intertwined with his request for restoration of lost good-time credits and damages, that resolution of the issues necessary to determine whether the "no threats of legal redress" portion of Rule 3 violates the First Amendment would, in effect, if favorable, would automatically entitle Clarke to reinstatement of his lost good-time credits. See Clarke 154 F3d at 190. The court went on to hold as such this determination would "necessarily imply" the invalidity of his punishment. Id at 190. The court held that because Clarke has not had his "conviction" in the disciplinary proceeding reversed, expunged or otherwise declared invalid his claim that the "no threats of legal redress" portion of Rule 3 is facially unconstitutional is not yet cognizable in a §1983 action. Id at 191. A "conviction", for purposes of "Heck", includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits. See Edwards 117 S.Ct 1587; Stone-Bey v Barnes 120 F3d 718, 721 (7th Cir 1997)("the conviction in the prison disciplinary sense is the finding of guilt on the disciplinary charge, and if success of plaintiffs section §1983 claim necessarily would imply the invalidity of that finding then Heck bars the claim until such time as its requirement are satisfied").

Here lies the distinction in the authority relied on by Schiller in his motion To Dismiss filed on 1-26-15. See CR vol.1 p. 166-171 and his "Reply" to Carlton's "Response" filed on 3-3-15. See CR. Vol.1 p. 191-193. All of the authority relied on by Schiller involve cases

where the Plaintiff's sought money damages under § 1983. without first having their convictions reversed, expunged or otherwise declared invalid see c.R. vol.1 p.169. In the alternative the Plaintiffs sought relief that would automatically entitle them to speedier or immediate release. Id at C.R. Vol.1 p. 192. Although the complete and sufficient record Calton seeks and the subsequent out-of-time-Appeal to utilize said record. which would afford Calton the belated opportunity to press both his Brady violation and Right to speedy Trial violation claims on appeal. which may enhance Calton's eligibility for earlier release. The relief Calton seeks in his lawsuit does not create Calton's entitlement to earlier release.

And it is the duty of this Court in its De Novo of the instant case to consider the distinction between relief that seeks to "enhance eligibility" for earlier release and that would "create entitlement" to earlier release. As noted in "serio" when considering a challenge to the procedures employed in determining prisoners eligibility for parole, the court explained that "even in some broad-based attacks, resolution of the factual allegations and legal issues necessarily to decide the §1983 claim may, in effect automatically entitle one or more claimant to immediate or speedier release. And such claims must be pursued through habeas Corpus. see serio 821 F.2d at 1119. The Fifth Circuit made it clear for the lower Courts in their determination of whether resolution of a claim would automatically entitle a claimant to immediate release, the "serio" Court explained that Courts must consider the distinction between claims that would merely enhance eligibility for earlier release and those that would create entitlement to earlier release. Id at 1119. Schiller's reliance on "Clarke" is distinguishable from the instant case because "Clarke" was so intertwined with the request for restoration of lost good-time credits and that resolution of the issues

necessary to determine whether the "no threats of legal redress" portion of Rule 3 violates the First Amendment would in effect, if favorable, automatically entitle "Clarke" to reinstatement of good-time credits. See Clarke 154 F.3d at 190. A reinstatement of Clarke's good-time credits would shorten Clarke's sentence and would "create entitle" to his earlier release. Thus distinguishing Clarke from the instant case. For authority directly on point is "Rheuark v Shaw" which indistinguishable from the instant case concerned the controversy that is more intertwined with the administration of the state Appellate Courts. See 547 F2d 1257, 1259 (5th cir 1977). Right on point with "Rheuark" is the fact that Calton does not ask for any relief from his sentence in this action, nor does Calton ask the trial court to order him released from confinement or modify, in any aspect, the conditions of confinement. Id at 1259. The only possible effect this action might have on Calton's confinement will be that, if he can obtain the transcripts to appeal and the requested out-of-time-appeal and should said appeal be successful, Calton would escape confinement on the State sentence. However Calton would not escape confinement so by order of the Trial Court, but instead as a result of a decision obtained from the second District of Texas Court of Appeals. Id at 1259. As the Court held in such a circumstance a claim is cognizable under §1983. And Calton's §1983 claims were rightfully filed, served and should be resolved on the merits. Id at 1259.

Suits against governmental employees such as Schiller are not particularly uncommon in the Fifth Circuit and have been considered Civil Rights actions. An analogous case to the subjudice is Qualls v Shaw 535 F2d 318 (5th Cir 1976). In Qualls, a state prisoner's, preparatory to filing a motion For collateral relief, requested of the court clerk the cost of sending him copies of records of another

Similar lawsuit and of the grand jury lists for 1970, 1971 and 1972. The Request was not acknowledged. The prisoner alleged that the records he sought were regularly made available to others. He sued for monetary relief and required an order directing the clerk to provide the information requested. The District Court dismissed the complaint as in the nature of habeas Corpus. In reversing, the Fifth Circuit said:

The District Court erred in its analysis of appellant's complaint. See Preiser 411 U.S. 475, 93 S.Ct at 27. Which provides that a state inmate may not utilize the Civil Rights Act to challenge his conviction, thus by passing habeas Corpus procedures and the requirements of exhaustion of state remedies. The Fifth Circuit went on to state. In this case, appellant is not challenging his conviction and he is not seeking his release from custody. He is claiming that he has been denied access to records. Which are made available to others and has been subjected to discriminatory treatment. Were he to prevail in this action the Court's opinion would not impinge in any manner on the validity of his criminal conviction, and therefore habeas corpus is not an appropriate remedy and the District Court's reliance on Preiser is misplaced. See Qualls 535 F2d at 319.

The Fifth Circuit consistently holds that if "a favorable determination would not automatically entitle the prisoner to accelerated release. The proper vehicle is a § 1983 suit. See Orellan v Kyle 65 F3d 29, 31 (5th Cir 1995); Carson v Johnson 112 F3d 818, 821 (5th Cir 1997) (court stating Carson has alleged that such reassignment from administrative segregation would make him eligible for parole, he has not alleged that such reassignment would automatically shorten his sentence or lead to immediate release. The parole decision would still be within the discretion of the parole board). In the instant case whether Calton will be granted any relief on his sentence or conviction will be in the discretion of the Appellate Court. Because Calton's success

in this lawsuit on his 14Th Amendment claims against schiller would merely enhance eligibility for accelerated release and thus "have an indirect effect on the determination of whether Calton can obtain any relief from an Appellate Court that may shorten his sentence or overturn his conviction. Are cognizable under § 1983. See Cook v TDCJ Trans. Plan. Dept. 37 F3d 166,168 (5th Cir 1994) (Because a successful suit would merely enhance eligibility for accelerated release and thus "has indirect effects on the determination of whether a claimant eventually receive parole" The Fifth Circuit held that the prisoner had brought a § 1983 claim)

As the above multiple Fifth Circuit opinions sustain. As well as "Heck" and the Below opinions From The Third, Seventh, Ninth and D.C. Circuit Federal Appellate Courts make clear Calton's contention that his 14Th Amendment Claims are cognizable under § 1983 is meritorious. See Heck 114 S.Ct at 2372 (If the suit "will not demonstrate the invalidity of any outstanding criminal judgment against the Plaintiff, the action should be allowed to proceed); Georgevich v Strauss 772 F2d 1078, 1087 (3d Cir 1985) (Enbanc) (that a prisoner's success in the litigation might increase the chance for early release does not in itself, transform the action into habeas corpus); Lambert v Finley 735 F2d 239, 242 (7th Cir 1984) (Court noting that Lambert neither directly challenged the fact of his confinement nor sought a determination that he is entitled to immediate or speedier release). The Court went on to note that to argue that provisions of the transcript might have resulted in a successful appeal of Lambert's murder conviction, a new trial, and possible aquittal and thereby would have indirectly affected the fact of his confinement; is to speculate in a Palsgrafian fashion that provides to tenous a basis for the determination whether an action properly characterized as an exclusive habeas corpus action. Id at 242. Also see Clutchette v Procunier 497 F2d

809, 813-14 (9th Cir 1974) ( the Preiser displacement rule is not applicable where the effect of prison disciplinary procedures on the duration of Plaintiff's sentence is "nebulous", speculative and incidental) as modified 510 F2d 613 (9th Cir 1975) rev'd on different grounds sub. nom. Baxter v Palmigiano 425 U.S. 308 (1976); Monk v Secretary of the Navy 793 F2d 364, 367-68 (D.C. 1986) (noting that Preiser Rule is applied less strictly in cases that do not involve the validity of the criminal judgment). Also see Gerstein v Pugh 420 U.S. 103, 107 n.6 (1975) (challenge to lack of probable cause hearings in state court could be pursued under §1983 because the plaintiff did not seek release)

As noted in "Edwards", supra, the Supreme Court made clear that ordinarily, a prayer for prospective injunctive relief will not "necessarily imply" the invalidity of previous loss of good-time credits and so may properly be brought under §1983. Indistinguishable from the plaintiff in "Edwards" the injunctive relief Calton seeks that may have an "indirect impact" on the validity of his conviction. see Orellan 65 F3d at 31. Calton's claims in his §1983 suit calls into question the unconstitutional Appellate procedure utilized during his First Appeal As A matter Of Right and the excessive delay and substantial retardation of being afforded a meaningful appeal. See CR Vol.1 "8Th" at p. 253-256 and "9Th" at p. 518-521. And the relief Calton seeks will in no way imply the invalidity of the judgment i.e. sentence or conviction on Calton's attempted murder case conviction. see Id "8Th" at p. 268-269 and "9Th" at p. 533-534.

Throughout the legal journey from "Preiser" to "Edwards" the Supreme Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state remedies) when they seek to invalidate either directly through an injunction compelling speedier release or

indirectly through a judicial determination that necessarily implies the unlawfulness of the state's custody. Thus, "Preiser" found an implied exception to §1983's coverage where the claim seeks not where it simply "relates to" "core" habeas relief, i.e. where a state prisoner requests present or future release. See Wilkinson v Dotson 125 S.Ct 1242, 1254 (2005). The Supreme Court in Wolff v Mc Donnell 418 U.S. 539 (1974) makes clear that §1983 remains available for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner. "Heck", supra specifies that a prisoner cannot use §1983 to obtain damages where success would necessarily imply the unlawfulness of a not previously invalidated conviction or sentence. And "Edward", supra, like "Wolff", supra, demonstrates that habeas remedies do not displace §1983 actions where success in the Civil Rights suit would not necessarily vitiate the legality of not previously invalidated state confinement. These cases taken and read together, indicate that a state prisoner's §1983 action is barred absent a prior invalidation — no matter the relief sought (damages or equitable relief) no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceeding) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration. See Wilkinson 125 S.Ct at 1248.

Applying these principles to the instant case, this Court should reasonably conclude in its De Novo review that Calton's 14th Amendment claims are cognizable under §1983 and that they do not fall within the implicit habeas exception. Calton does not seek relief that will render invalid the state procedures used in direct Appeal proceedings or deciding direct Appeal proceedings or direct appeal proceeding review procedures. Id at 1248 (citing Wolff, supra, at 554-555). Nor does Calton seek an injunction ordering his immediate or speedier release

into the community. Id at 1248 (citing Preiser 411 U.S. at 500; Wolff, supra at 554). And as in Wolff, supra, a favorable judgment would not "necessarily imply the invalidity of Calton's conviction or sentence. Id at 1248 (citing Heck, supra at 487). Success for Calton in his claims under § 1983 does not mean immediate release from confinement or a shorter stay in prison. It bears repeating that at most Calton will finally be provided the pretrial records he timely requested at the time in question and the belated Appeal to utilize said records to raise both the Brady violation and Right to Speedy Trial violation claims on appeal. And in the resolution of this new Appeal the Appellate Court in its discretion may or may not reverse the convicting Court's judgment. See Id at 1248. (Court noting success for Dotson does not mean immediate release from confinement or a shorter stay in prison, it means at most new eligibility review, which at most will speed considerations of a new parole application. Success for Johnson means at most a new parole hearing at which Ohio Parole authorities may, in their discretion, decline to shorten his prison term.) Because Calton's claims and relief requested would not necessarily spell speedier release, his claims do not lie at the core habeas. Id at 1248 (citing Preisner 411 U.S. at 489)

    As the multiple Supreme Court of the United States confirm Schiller's contention is without merit that Calton's claims are not cognizable under § 1983. And this Court cannot reasonably find in its De Novo review that An Appellate Procedure is part of Calton's sentence or indeed an aspect of the sentence that Calton's § 1983 claims, will if successful, will invalidate. As the Supreme Court has previously found such an argument unpersuasive in an analogous context. See Wilkinson 125 SCt at 1249. In Context, "Heck", supra uses

the word "sentence" to refer not to prison procedures, but to substantive determinations as to the length of confinement. Id at 1249 (citing Muhammad v Close 540 U.S. 749, 751 n.1 (2004) (The incarceration that matters under Heck is the incarceration ordered by the original judgment of conviction). A criminal judgment generally includes both the conviction and sentence. See e.g. Fed. R. Crim. P. 32(K)(1) (a criminal judgment must set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence"); Teague v Lane 489 U.S. 288, 314 n.2 (1989) (As we have often stated, a criminal judgment necessarily includes the sentence imposed upon the defendant). The Tex.C.Crim. Proc. defines "judgment", in part, as "the written declaration of the court signed by the trial judge and entered in a record showing a conviction or acquittal of the defendant. See Art. 42.01(1). The court of criminal Appeals has construed the term "conviction" to mean "a judgment of guilty and the assessment of punishment". See Ex Parte Evans 942 sw2d 643, 646-47 (Tex Crim App 1997 reh'g den). Thus, a challenge to a conviction is limited to claims regarding "the final consummation of the prosecution", "the judgment or sentence that the accused is guilty as charged" or "judgment of guilty in the assessment of punishment. Id at 646-47.

In the instant case Calton's challenge of the unconstitutionality of the Appellate Procedure utilized during his direct appeal and the substantial retardation of a meaningful appeal. Is in no way a challenge to his conviction. Because Calton does not call into question the validity of the prosecution or the judgment of guilt. Cf. Id at 646-47. Calton's contention is that his claims under § 1983 are more aligned with the plaintiff's in Wolff v. McDonnell, supra. In "Heck", supra, the court expressly distinguished Wolff, noting that Wolff challenged the procedure by which the inmate was denied good time credits. "Wolff" indistinguishable from the instant case, involved a claim of the constitutionality of the procedure, not for reaching the wrong result i.e. the denial of

good-time credits. See Heck 114 S.ct at 2370. Nor is there any indication in Wolff, or any reason to believe, that the unconstitutionality of the procedures vitiated the denial of good time credits. Thus the claims alleged in "Wolff" indistinguishable from Calton's claims do not call into question the lawfulness of his continuing confinement and thus is not barred by "Heck" Id at 2370. Further the "Heck" Court, explicitly stated that Wolff claims did not "call into question the lawfulness of the Plaintiff's continuing confinement" and recognized Challenges to the constitutionality of the procedures, rather than reaching the wrong result are cognizable. Id at 2370. Likewise such claims do not require exhaustion. See Offet v Solem 823 F2d 1256, 1258 (8th Cir 1987) (district Court should stay § 1983 action pending exhaustion of habeas corpus remedies, if favorable result would establish "an irrefutable claim for early or immediate release under habeas"). "Heck" uses the word "sentence" interchangeably with such other terms as "continuing confinement" and "imprisonment". See Heck 512 U.S at 483 ; See also "Edwards", supra at 520US. at 645, 648 (referring to invalidity of the judgment" or " punishment imposed "). So understood "Heck" is consistent with other cases permitting prisoners to bring § 1983 Challenges to prison administrative decisions. See e.g Wolff 418 U.S at 554-55 ; Muhammad 540 U.S at 754 ; see also Id at 754 (rejecting " the mistaken view that Heck applies catergorically to all suits challenging prison disciplinary proceeding")

Indeed the Supreme Court has repeatedly permitted prisoners to bring § 1983 actions challenging the conditions of their confinement—conditions that, were Ohio right in the "Wilkinson" opinion might be considered part of the sentence. see Wilkinson 125 S.ct at 1249 (citing Cooper v Pate 378 U.S. 546 (1964); Wilwording v Swenson 404 U.S. 249, 251 (1971). And this interpretation of "Heck" is consistent with "Edwards", where the Court held the prisoner's suit Heck-barred not because it sought nullification of the disciplinary procedures but rather nullification of the the disciplinary procedures would lead necessarily to restoration of

good-time credits and hence would shorten the prisoner's sentence. See Wilkinson 125 S.Ct at 1249 (citing Edwards 520 U.S. at 646). In the instant case nullification of Calton's unconstitutional Appellate Procedure held in 2005 that utilized an inadequate and insufficient record. will not disturb Calton's conviction or shorten Calton's sentence. Nor will Calton be entitled to speedier release from custody. After obtaining the injunctive relief requested i.e. the relevant pretrial records and an out-of-Time Appeal to utilize said record. And therefore as the above authority confirms the trial court erred when it dismissed Calton's §1983 claim against Schiller. See CR Vol.1 p. 450.

## Appellant's Second Point of Error

The Trial Court erred in granting Steve Schiller's motion to Dismiss Appellant's State Common Law Claims

### Standard of Review

When, as in the instant case, an inmate lawsuit is dismissed as frivolous for having no basis in law or fact but no fact hearing is held, this Court's review focusses on whether the inmate lawsuit has an arguable basis in law. See Scott 209 SW3d at 266. The issue as to whether a claim has an arguable basis in law is a legal question that is reviewed de novo. See In re Humpheys 880 SW2d at 404 (explaining questions of law are de novo). The scope of review is limited to those arguments raised in the motion to Dismiss. See Brown 145 SW2d at 174. In conducting a review of the complaint, this Court must take true the factual allegations in an inmate's petition and review the types of relief and causes of action set out therein to determine whether, as a matter of law, the petition states a cause of action that would authorize relief. See Scott 209 SW3d at 266. A claim has no arguable basis in law if it relies upon an indisputable meritless legal theory Id at

266-67. Finally this Court is to hold Calton's pleadings to less stringent standards than formal pleadings drafted by lawyers. See Haines 404 U.S at 420, and a claim should not be dismissed unless it appears beyond doubt that a Plaintiff can prove no set of facts in support of his claims which would entitle his to relief. See Conley 385 U.S. at 45-46.

## Argument

In his motion To Dismiss Schiller contends that governmental entities and their employees acting in their official capacity are immune from suits for damages, unless there is an explicit waiver of that immunity. And that the only waiver of immunity for a negligence cause of action is the Texas Tort Claim Act. And that to sufficiently plead a cause of action within the Tex. Tort Claims Act there must be an allegation of bodily injury suffered through the use of a motor-driven vehicle or through the condition or use of real or personal property. Citing Tex. Civ. Prac. and Rem. Code § 101.021. Schiller went on to contend that Calton had made no allegation that fits within the limited waiver of the Tex. Tort Claims Act. And as a result thereof there was not any arguable bais law in law or fact to suggest any waiver of Schiller's official immunity for the state Law Claims pleaded by Calton. See CR Vol.1 p. 169 and 170.

However, Calton's contention is that Schiller was sued in his individual capacity under state Common Law. Therefore Calton is seeking to recover damages from Schiller, and not Tarrant County, on his common law state Law claims as pled indistinguishablebly in the Eighth and Ninth Amended Complaints. See CR. Vol.1 "8Th" at p. 256-265 and "9Th" at p. 521-530. A plaintiff may sue a governmental employee in his official capacity, in an individual capacity or in both capacities. See Nueces County v Ferguson 97 SW3d 205, 213 (Tex. App. Corpus Christi 2002, no pet). Claims against governmental employees in their official capacities are separate and distinct from claims against governmental employees in their individual capacities. Id at 213-214. "It is fundamental that a suit against a state

official is merely another way of pleading an action against the entity of which the official agent is employed. See Texas A and M Univ. v Koseglu 233 SW3d 835, 844 (Tex 2007). In a suit against a person in his official capacity, the real party in interest is the employing governmental entity. Id at 844. A suit against a person in his individual capacity, however, seeks to impose personal liability on the individual being sued for personal actions under color of state law. See Ferguson 97 SW3d at 214

The Capacity in which the individual is sued affects the defenses to liability that may be raised. See Jackson v Stinnit 881 SW2d 498, 500 (Tex. App. El Paso 1994, no writ). If an individual is sued in his official Capacity, the employee may raise any defense that would be available to his employer including the defense of sovereign immunity. See Tex. Parks and wildlife Dept v E.E. Lowery Realty, Ltd 155 SW3d 456, 458 (Tex. App. Waco, pet. filed). Individuals like Schiller who are sued in his individual capacity, however, may not rely on the defense of sovereign immunity but may raise the defense of official immunity. See Ferguson 97 SW3d at 215. A governmental employee is entitled to official immunity if he is (1) performing discretionary duties that are (2) within the scope of his authority and (3) performed in good faith. See City of Lancaster v Chambers 883 SW2d 650, 653 (1994). In determining whether Schiller is immune herein, there first must be a determination made by this Court whether he was performing discretionary duties when the alleged acts and/or inactions occurred in the preparation of the Record on Appeal For Calton's Direct Appeal. See Cloud v McKinney 228 SW3d 326, 335 (Tex. App. Austin 2007). Discretionary actions are entitled to protection under official immunity, but ministerial actions are not. See Ballantyne v Chapman Builders, Inc 144 SW3d 417, 425 (Tex 2004). An action is ministerial if it is one that is defined with such precision that no discretion or judgment is left for the actor. Id at 425. In other words, if the official has to commit the action without any choice in complying, the

act is ministerial" Id at 425. However, if the action requires "personal deliberation, decision, and judgment," then the action is discretionary. Id at 425.

Schiller as the official Court Reporter of the 213Th Judicial District Court at the time in question. Was paid a regular salary for services as a Court Reporter. See Dallas County v Halsey 87 sw3d 552, 553 (Tex 2002). As a part of his official duties he recorded the relevant pretrial hearings as well as the trial on the merits of the Case "State of Texas v Allen "F" Calton Cause No. 0843 168 beginning on 1-8-04. and concluding on 5-20-04. Schiller also prepared i.e. transcribed those previously recorded records. To be utilized in perfecting the Appeal for Calton's Attempted murder conviction. Per calton's request For A Free Reporter's Record and The Convicting Court's order granting the same. CR. Vol.1 "8Th" at p. 274-275 and "9Th" at p. 539-540. For preparing the record Schiller was paid a separate fee of approximately $3,000.00 from the general funds of Tarrant County. See Halsey 87 sw3d at 553.

In this Courts review of the Pleadings, it must ascertain the true nature of Calton's claims and not "exalt form over substance. See Pickell v Brooks 846 sw2d 421, 424 n.5 (Tex. App. Austin 1992 writ. den) (citing State v Lain 349 sw2d 579, 582 (Tex 1961). Although Calton makes clear that Schiller was sued only in his official capacity under §1983 to permit calton to obtain injunctive relief under federal law and Calton sued Schiller in his individual capacity to recover an award of damages from Schiller. See CR. Vol.1 "8Th" at p. 197 and "9Th" at p. 460. Irrespective of that fact, The Course of the proceedings" typically will indicate the nature of of the liability sought to be imposed. See Brandon v Holt 469 U.S. 469 (1985); Terrell ex rel Estate of Terrell v Sisk 111 sw3d 274, 281 n.5 (Tex App. Texarkana 2003). In both the Eighth and Ninth Amended Complaints which are indistinguishable as far as the allegations alleged in support of the state Law claims, The crux of Calton's state Law Claims against Schiller all involve acts and/or omissions that occurred outside of the courtroom and well after the trial in question ended on 5-20-04. For example Schiller did

Appellant opening Brief Page 25 of 50

not prepare and file the incomplete Reporter's Record in the Court of Appeals until 11-3-04 and 11-9-04 respectively. See CR Vol.1 "8th" at 224 and "9th" at p.487. Schiller's material misrepresentation was not made to the defense until his conversation with Appellate Counsel Barry Alford on or about 4-1-05. See CR Vol.1 "8th" at p.202-203 and "9th" at p.465-466. Also see Id at "8th" at p.276 and 281 and "9th" at p.541 and 545. In deciding whether the facts as alleged in the Eighth and Ninth Amended Complaints fall outside the scope of official immunity. This Court must recognize that the basis for the alleged liability is Schiller's failure to prepare and file a complete and sufficient record appeal on 11-3-04 and 11-9-04. As well as the fact that Schiller made a material misrepresentation to Calton on or about 4-1-05.

These allegations as alleged in both the Eighth and Ninth Amended Complaints confirms that Calton has asserted claims against Schiller in his individual capacity for each and every State Law claim pled. See CR Vol.1, "8th" at p.194-271 and "9th" at p.457-536. Throughout his pleadings Calton repetively utilizes the word "preparation" and the statement "failed to prepare, furnish and file a sufficient and complete record on Appeal. See The Eighth and Ninth Amended Complaints generally. CR Vol.1. "8th" at p.194-271 and "9th" at p.457-536. In fact Calton since filing his complaint with the C.R.C.B. in 2012. Two years before filing this lawsuit has always complained about Schiller's omission in failing to prepare and furnish Calton a complete and sufficient record on appeal. In particular Calton complaints are based upon Schiller's omission of all but one date of Calton's pretrial hearing dates. See Calton's Affidavit. See CR Vol.1 "8th" at 278-280 and "9th" at p.542-544. As confirmed by the C.R.C.B.'s Final order. which found Schiller in Violation of C.R.C.B. Rule X (a)(4) For his Incompetence in failing to prepare transcripts for pretrial hearings that were properly requested by Calton and for failing to make reasonable inquiries about

the extent of the record. See CR. Vol.1 "8Th" at p.285-287 and "9Th" at p.549-551. As this irrefutable evidence confirms the crux of Calton's complaints have always undisputedly pertained to Schiller's "Preparation". of the record. Calton has always stressed "Prepare" and placed emphasis on "Preparation"

Schiller's duty to prepare and provide Calton a complete reporter's record at Calton's request was outside of Schiller's official duties to the Court. See Halsey 87 sw3d at 556 (citing Hatch v Davis 621 sw2d 443,446 (Tex. Civ. App. Corpus Christi 1981, writ ref'd n.r.e.) (holding that a court Reporter can recover attorney's fees for a suit involving preparation of a record because the claim was for personal service). In light of the fact that Schiller was court ordered to prepare and furnish Calton a sufficient record on Appeal at state expense sustains the fact that Schiller was not performing a discretionary duty. See CR. Vol.1 "8Th" at p.275 and "9Th" at p. 540. Also see Halsey 87 sw3d at 557 (Holding preparation of the record does not necessitate the use of discretion, but is more in the nature of ministerial or administrative task). In preparing the Record the Court Reporter does not exercise discretion. Id at 557.; McLallen v Henderson 492 F2d 1298,1299 (8th Cir 1974) (court Reporter's duties are ministerial in nature and not discretionary in nature)

In the instant case Schiller prepared and furnished Calton a Reporter's Record per Calton's request and the court order compelling the same. See CR Vol.1 "8Th" at p. 274-275 and "9Th" at p. 539-540. Schiller was paid separately for this service, and completed the preparation per terms of Calton's Request and the Convicting Court's order. A transaction that was separate from his official reporting responsibilities. See Halsey 87 sw3d at 557 (Court holding that Halsey prepared the Reporter's Record at the County's Request. She was paid separately for this service and completed the preparation per terms of her contract with a party, a transaction that was separate from her official reporting responsibilities). In a similar context in support of Calton's contention that Schiller was sued herein in his individual capacity. Are Supreme Court opinions

Mireles v Waco 502 U.S. 9 (1991) and Forrester v white 484 U.S. 219 (1988) where the Supreme Court stated whether an act is judicial (or non judicial) can readily be determined by the nature of the act i.e. whether it is a function normally performed by a judge in the court room. See mireles 502 U.S. at 12, as contrasted from other administrative, legislative, or executive acts that simply happen to be done by Judges. See Forrester 484 U.S. at 227. Schiller's official duties are those performed by him in the court room. For e.g. Schiller's official capacity duties are attending all court sessions, record the proceedings, accept and mark exhibits offered in evidence during a proceeding and then file all exhibits with the trial court clerk after the proceeding ends. See generally T.R.A.P. 13.1 and Gov'T Code § 52.046.

Schiller's official capacity acts are those performed by Schiller during court room proceedings. Cf. Twilligear v Carrell 148 Sw3d 502, 505 (Tex. App. Houston [14 01st] 2004) (court noting whether it is a function normally performed by Judges in a court room is dispositive to whether the act is judicial or non judicial). Conversely the preparation of the record is an administrative act that just happens to be done by a court Reporter but is done in a personal capacity and in all probability is done outside of the court room. Cf Forrester 484 U.S. at 227. Every allegation contained in both the Eighth and Ninth Amended Complaints. See CR Vol. 1 "8th" at p. 199-271 and "9th" at p 457-536. Relates to actions taken by Schiller outside of the courtroom and not while Schiller was performing his official duties. Permitting this Court to reasonably conclude that the true nature of Calton's claims as alleged are claims under State Law against Schiller in his individual capacity. See Pickell 846 Sw2d 424 n.5 (holding that we must determine true nature of Plaintiff's claims). The Instant case is readily distinguished from "Terrell v Sisk" because the allegations alleged by Calton are for wrongdoing or negligence by Schiller in actions and/or omissions Schiller took in his personal persona while performing personal services and thus were taken outside of his official capacity. See Terrell v Sisk 111 Sw3d at 281-82 (holding that Judge was sued in his official capacity only because all allegations in Petition "were of claimed wrongdoing or negligence by the Judge in ac-

Appellant's Opening Brief page 28 of 50

tions he was able to take only because of his position as a public servant" and did not allege any actions taken outside his official capacity). Sustains the fact the District Court erred by dismissing Calton's State Common Law claims against Schiller on 6-1-15. See CR. Vol. 1 p. 450. Because Schiller was not entitled to sovereign or official immunity sued in his individual capacity while performing ministerial acts.

## Appellant's Third Point Of Error

The Trial Court erred by Failing To Appoint Counsel For The mentally ill Appellant. To ensure the proceedings Remained adversarial and whose liberty is at stake.

### Standard Of Review

An Appellate Court will review the trial Court's refusal to appoint counsel in a civil case for abuse of discretion. See Gibson v Tolbert 102 SW3d 710, 712 (Tex 2003). The Trial Court abuses its discretion when it reaches a decision "so arbitrary and unreasonable as to amount to clear and prejudicial error of law". See Johnson v Fourth Court of Appeals 700 SW2d 916, 917 (Tex 1985). In determining whether there is an abuse of discretion by a trial Court. An Appellate Court will decide whether the trial Court acted without reference to any guiding rules and principles such that its act was arbitrary and unreasonable. See Downer v Aquamarine Operators Inc. 701 SW2d 238, 241-42 (Tex 1985). A trial Court abuses its discretion when it acts arbitrarily, capriciously or without reference to guiding rules or principles. See Brewer v Collins 857 SW2d 819, 822 (Tex. App. Houston [1st Dist] 1993, no writ)

### Argument

A district judge may appoint counsel to attend to the cause of a party who makes an affidavit that he is too poor to employ counsel to attend to the cause. See Tex Gov't Code §24.016. Also see Calton's Affidavit of Indigence. 1 St. Supp. CR. Vol. 1 p. 4-6 and Inmate Trust Fund Account statement. 2nd Supp. CR Vol. 1 p. 5. The Sixth Amendment to the U.S Const. grants

an indigent criminal defendant the right to counsel, that right does not apply to civil cases. See Turner v Rogers 131 S.ct 2507, 2515-20 (2011). Instead, with only rare exceptions, a party is not entitled to Court Appointed counsel in a civil case. See Gibson 102 sw3d at 712. A trial Court has discretion to appoint counsel to a civil litigant in some "exceptional cases" where "the public and private interests at stake are such that the administration of Justice may best be served by appointing a lawyer to represent an indigent civil litigant. See Travelers Inden. Co. V mayfield 923 sw2d 590, 594 (Tex.1996). In such a case, there is a presumption that an indigent litigant has a right to appointed counsel, but only when, if he loses, he may be deprived of his physical liberty. See Lassiter v Dep't of Social Serus. 452 U.S. 18, 25-27 (1981) In the instant case this Court should take judicial notice of the fact that although Calton is currently incarcerated. His liberty is still at stake. Because without the newly granted Appeal. That's needed to Afford Calton the opportunity to challenge his loss of liberty. By raising the two meritorious claims on appeal that Calton was precluded from raising during the initial appeal due to the omission of the pretrial hearing records memorializing those claims. See CR. Vol.1 "8Th" at p. 215-222 and "9Th" at p. 478-485.

Calton's liberty is at stake because his newly granted appeal will be undisputedly meritorious and will result in a new trial. Due to the loss and/or destruction of some of the relevant records. See T. RA. P. 34.6 (F). Also see CR Vol.1 "8Th" p.206-209, p.226, p.288 and "9Th" at p.469-472, p. 489, p.532. Thus when the trial court issues its equitable order that Calton be afforded an out-of-time-Appeal. Calton will object to the record and move for an abatement and the Appellate court will remand the case back to the convicting court to settle the dispute see T.RAP. 34.6(e)(3). And once the relevant records are confirmed to be lost and irretrievable by the convicting court a new trial is a foregone conclusion. See Johnson v State 151 sw3d 193, 196 (Tex Crim App 2004). The undisputed evidence confirms there are records lost that are necessary for the appeal resolution. See Schiller's letter dated 7-20-12. CR Vol.1

"8Th" at p.288 and "9Th" at p.552. Calton concedes that his ultimate goal is to obtain a new trial and all probability may just be entitled to the same. Due to the loss and/or destruction of some of the records. See CR. Vol.1 "8Th" at p.226 and p.288 and "9Th" at p.489 and p.552. This is not dispositive because Calton in his § 1983 complaint did not seek a new trial. If Calton is afforded A new trial it will be by order of the Appellate court and not by the equitable order sought from the court below. See Rheuark 547F2d at 1259 (Court noting Rheuark does not ask for any relief from his sentence in this action, nor does he ask this Court order him released from confinement or modify, in any aspect, the conditions of confinement) The Court went on to state the only possible effect this action might have on Rheuark's confinement. Will be that, if he can obtain the transcripts to appeal, and should his appeal be successful, he would escape confinement, on the state sentence. However, he would not do so by order of this court, but as a decision obtained from the Appellate Court of the State of Texas Id at 1259. Also see Leal-Garcia v Quaterman 573F3d 214, 224 (5th Cir 2009) (Court noting Although the ultimate goal of Leal's is to obtain court review of his conviction, he is actually attacking the state's failure to comply with the Avena decision as implemented by the Bush Declaration. And we will not require courts to determine petitioner's ulterior motives)

The undisputed evidence confirms there was a Speedy Trial hearing on 2-12-04 and said hearing memorializes the convicting court's denial of Calton's motion To Dismiss For want of Speedy Trial. See excerpt page 9 of the convicting court's memorandum, Findings of Fact, Conclusion of Law and order issued on 1-9-07 in reference to writ No. C-213-007618-0843168-A. where Judge Robert Gill repeatedly refers to the 2-12-04 hearing. See CR. Vol.1 "8Th" at p.299 and "9Th" at p.564. The "Appeal Resolution" encompasses both affirmance and reversal of the trial court's Judgment. See Gaurell v Rodriguez 225 SW3d 758, 763 (Tex.App. [14th Dist] 2007). As a result of these facts and

authority in support thereof sustains there is a presumption that the appointment of counsel was warranted under the theory that Calton's liberty was indeed at stake.

Additionally the appointment of Counsel was warranted due to the "unique circumstances" of the instant case that were beyond exceptional. In evaluating what might constitute exceptional circumstances, a court is to consider the "unique circumstances" of the case and determine whether the trial court had "no reasonable alternative but to appoint counsel" exceptional circumstances is by definition rare and unusual. see Gibson 102 sw3d at 711. Beyond what the Texas Supreme states in Travelers Identity Co. 923 sw2d at 592. The Court has never addressed what "exceptional circumstances" warranting appointed counsel might be. As the Court noted in Gibson v Tolbert 102sw3d at 713. That may simply be because what is exceptional is by definition rare and unusual is something not identified by the general rule. Only by evaluating the unique circumstances of a given civil case could a court ever determine that it has no reasonable alternative but to appoint counsel. Id at 713. The Court went on to note, in short, it is easier to determine what is not exceptional than pronounce a general proposition on what would be exception. On the undisputed facts of the instant case the exceptional and unique circumstances warranted the appointment of Counsel. specifically Calton is mentally ill with a diagnosis of major depression with psychotic features which precluded Calton from effectively litigating and prosecuting his claims. Thus this civil action was not adversarial at all relevant times. Due to the fact that when Calton takes his psychotropic medications as prescribed renders Calton in a very sedated and confused state. At which time Calton cannot concentrate, maintain a train of thought, think rationally or research legal issues. While under the influence of his prescribed psychotropic medications and physical ailments medications regimen. See CR vol.1 p. 123-124 paragraphs 9-11. At times Calton had to pay fellow prisoners his food trays to respond to defendant pleadings and prepare pleadings filed herein. And as a result thereof had to miss two of three meals per day for months. Because Calton had no commissary items to pay and had

to barter his food trays for legal assistance. See CR. vol.1 p.124-126 paragraphs 12-15. In an attempt to prosecute this lawsuit Calton either had to miss multiple meals a day as a result of selling his food to fellow prisoners for their legal help or Calton had to miss several doses of his prescribed medications. which put Calton at a very high risk of suicidal or self injury behavior. See CR.vol.1 p.123-127 paragraphs 9-17. Calton's debilitating state while under the influence of the laundry list of prescribed medications including Buspropion, Diphenhydramine, Haloperidol, Nortriptyline, Lisinopril, meclizine, propranolol and Ranitidine. See CR.vol.1 p.130-131. Prevented Calton from maintaining this civil action at a constitutional comporting and as an equitable adversary affair. The undisputed evidence in the record noted above makes clear that Calton's mental and physical disabilities placed him at an unreasonable disadvantage and predicament. And thus the instant case did not maintain the adversarial in nature requirement to allow it to be equitably resolved for all parties involved and for the administration of justice generally.

The Texas Supreme Court recognized and made clear that the existence of extraordinary circumstances required to authorize the appointment of counsel is a fact based question that is best answered in connection with each specific case. The information contained in the Affidavit in support of his motion for the Appointment of Counsel. Can serve as a basis for this court to determine that the instant case is an exceptional case where the administration of justice would have been better served by appointing a lawyer to represent Calton. See CR. vol.1 p.121-140 generally. Also see Mayfield 923 SW2d at 594. The undisputed evidence and authority establishes as a matter of law appointment of counsel was mandatory. Distinguishing the instant case from the following. See In re Logan 2003 Tex App. Lexis 4499 (Court noting from the information here, we cannot conclude as a matter of law that such extraordinary circumstances are shown would require us to order the court to Appoint Counsel. Our decision on this limited record does not, of course, preclude the County Court from doing so it determines it to be appropriate). The trial court erred and violated its duty to ensure that the instant case would remain truly adversarial

in nature between the mentally ill appellant and defendants sued herein. See Public Utility Comm'n v Cofer 754 sw2d 121, 124 (Tex 1988). In discussing the scope of the Court's inherent authority to appoint counsel for civil litigants. The Court stated that, "under exceptional circumstances, the public and private interests at stake may be such that the administration of justice may be best served by appointing a lawyer to represent an indigent civil litigant. See Gibson 102 sw3d at 712. In light of "Gibson" it is readily apparent that a trial Court's inherent power to appoint counsel is necessarily contingent on a party's indigent status and on the existence of exceptional circumstances. Both factors readily exist as confirmed by the undisputed evidence. see Affdavit CR. Vol. 1 p 121-127 paragraphs 2-17, see Affidavit of Indigence 1st. Supp. CR. Vol. 1 p. 4-6, and certified Copy of Inmate Trust Fund Account Statement forwarded to the Court on 10-17-14 along with the rest of the Appointment of Counsel pleadings filed on 10-21-14. 2nd Supp CR. Vol. 1 p5. The exceptional circumstances of the instant case including Calton's mental instability that prevented him from consistently and effectively prosecuting his claims at all times and his incarceration warranted the appointment of Counsel. Cf. Hosey v County of Victoria 832 sw2d 701, 705 (Tex. App. Corpus Christi 1992) (stating circumstances, such as imprisonment, may make it impossible for a litigant to represent himself. When that is so, Counsel is required, at the peril of losing the opportunity, to litigate the grievance), Armstrong v Randle 881 sw2d 53, 57 (Tex. App. Texarkana 1994, writ den'd) (a trial Court abuses its discretion only if the inmate has been effectively barred from presenting his case).

If this court affirms the trial Court's judgment in the other point of errors raised herein. Sustains the fact that Calton was effectively barred out of Court and litigating the grievance. Due to the incontrovertible facts establish that Steve Schiller's incompetent reporting practices and material misrepresentation to the defense. See CR vol. 1 "8Th" at p. 285-287 and "9Th" at p. 549-551. Was the direct cause of Calton's Direct Appeal to be foiled and the reason Calton his yet to be Afforded his Constitutional Right to a meaningful Appeal. In violation of both Clauses of the Fourteenth Amendment. Sustaining the fact the trial Court's

Appellant's Opening Brief Page 34 of 50

failure to appoint was not only an abuse of discretion but was beyond presudicial and "probably caused" the rendition of an improper Judgment. See T.R.A.P. 44.1(a)(1). The record herein supports the trial court erred when it denied Calton's motion for Appointment of Counsel on 12-1-14. See CR Vol.1 p.140-151 and Id at p.165.

## Appellant's Fourth Point Of Error

The District Court erred by denying Calton's Civil Injunctive Relief Request on his §1983 claims due to the extraordinary and exceptional circumstances of the instant case and the complete failure of the system i.e. Calton has no other adequate remedy at law. Although it is undisputed Calton's Constitutional Rights were violated.

## Standard Of Review

The Grant or refusal of a permanent injunction is within the trial court's sound discretion and, on appeal, review of the trial court's action is limited to question of whether the action constituted a clear abuse of discretion. See State v Texas Pet Food, Inc 591 SW2d 800, 803 (Tex 1979)

## Argument

Calton's contention is that he is entitle to civil injunctive relief on his §1983 claims. Specifically he seeks a complete and sufficient Record and new appeal to utilize said record. As requested in both the Eighth and Ninth Amended Complaints. See CR Vol.1 "8Th" at p.268-269 and "9Th" at p.533-534. Also see Calton's motion for Preliminary Injunction, Exhibits and Affidavit in support thereof. See CR. Vol.1 p.363-413. The trial court erred by denying Calton injunctive relief by orders signed on 5-29-15 and 6-1-15. See CR. Vol.1 p.448 and 450. The facts as alleged establish that a complete failure of the system has occurred. As confirmed by Calton's attempt to obtain relief to no avail due to the procedural barriers of C.C.P Art. 11.07 § 4(a), 28 U.S.C § 2244 and the Texas Abuse of writ order entered previously against Calton, which are unconstitutional on

their face when applied to the undisputed facts of the instant case. see CR. Vol. 1 "8Th" at p.360-362 and "9Th" at p.625-627. Since being put on notice that Schiller made a material misrepresentation concerning the relevancy of records timely requested by Calton. see CR. vol.1 "8Th" at p.281-282 and "9Th" at p.545-546. which resulted in Calton's Direct Appeal to be unconstitutionally resolved. Due to the omitted records were necessary for appeal. Calton alleged in both his Eighth and Ninth Amended Complaints under §1983 that will rectify the unconstitutional appellate procedure and the ongoing delay and substantial retardation of a meaningful appeal. The complaints each make clear that without civil relief a miscarriage of Justice will lie as no other remedy at law exists in state or Federal Court under Habeas Corpus. see CR. Vol.1 "8Th" at p.248-250, 360-362 and "9Th" at p.513-514, p.625-627. At common law, for a permanent injunction to issue the Plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. see Amoco Prod. Co. v Village of Gambell 480 U.S. 531, 546 n.12 (1987) (Recognizing that standard of Preliminary injunction is essentially the same for permanent injunction with exception that the Plaintiff must show actual success on the merits rather than a mere likelihood of success)

To be entitled to an injunction, a plaintiff must show (1) that a wrongful act occurred i.e that the Plaintiff has a cause of action against the defendant; (2) that the Plaintiff will likely succeed on the merits of his cause of action and (3) that the Plaintiff will suffer harm. See walling v metcalfe 863 sw2d 56,57 (Tex 1993). The "Probable harm" element has three components. The Plaintiff must show that the harm is imminent, the the injury would be irreparable, and that the Plaintiff has no other adequate legal remedy. see Garcia- marroquin v Nueces County Bail Bond Bd. 1 sw3d 366, 375 (Tex. App. Corpus Christi, 1999, not. pet. h). The decision to grant or deny injunctive relief is within the district Court's discretion, which should be exercised consistent with traditional principles of equity. See e Bay Inc. v mec Exchange LLC 547 U.S. 388, 394 (2006). A party is entitled to a permanent injunction only if (1) the party has suffered irreparable injury; (2) that remedies at law, such as monetary damages, are inadequate to compensate that injury; (3) that considering the balance of hardship between the parties, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction" Id at 391.

As a preliminary matter it is undisputed that a wrongful act occurred Schiller has admitted to providing Calton an incomplete record and his licensing Board found him guilty and incompetent for the same. See CR. Vol. 1 "8Th" at p. 281-282, 285-287 and "9Th" at p. 545-546 and p. 549-551. Thus it is undisputed that Schiller set in motion the chain of events that he knew or reasonably should have known would harm Calton. Thus establish the requisite causal connection that schiller's incompetence and misrepresentation resulted in Calton's Direct Appeal to be resolved on an incomplete and insufficient record and the omitted records were necessary for appeal. Because they memorialized evidence and claims Calton was precluded from raising on appeal. See CR Vol. 1 "8Th" at p. 204-205 p. 215-222 and "9Th" at p. 467-468, p. 478-485 and has also resulted in the substantial delay and retardation in Calton obtaining a meaningful appeal. See Morris v Dearborne 181 F3d 657, 672 (5th Cir 1999)

An injunction is a pure application of equitable relief, one seeking injunctive relief must plead and prove that he has no adequate remedy at law and irreparable injury is threatened. See Williams v Compressors Eng's Corp. 704 sw2d 469, 472 (Tex App. Houston [14th Dist] 1986 writ ref'd n.r.e). For purposes of injunctive relief, an adequate remedy at law exists when the situation sought to be enjoined is incapable of being remedied by legal measurable damages. See Hag v America's Favorite Chicken Co. 921 sw2d 728, 730 (Tex App. Corpus christi 1991, writ dismissed w.o.J). To get an injunction, you must generally show that you don't have an "adequate remedy at law" which means that an award of damages or other relief will not protect you. see Lewis v Bourne 534 F2d 1115, 1115 (5th Cir 1976). Although Calton is suing for damages under state law under the same set of facts is not dispositive. The mere fact that economic damages may be available does not always mean that a remedy at law is "adequate". For example the Supreme court has found that a remedy at law is inadequate if legal redress may be obtained only by pursuing a multiplicity of actions. See Lee v Bickell 292 US 415, 421 (1934) (we are not in doubt, the multiplicity of actions necessary for redress of law is sufficient to uphold the remedy by injunction). Also see Holobec v Bradenberger 214 sw3d 650, 659 (Tex App. Austin 2006) (Holding money damages not always an adequate remedy at law. The injunction was an addition to and was not a duplicate of, any award of monetary damages and designed to grant the appellees complete relief. This Granting injunctive relief in addition to monetary damages award is not

an abuse of discretion in this circumstance). In the instant case the injunctive relief under §1983 will be merely an addition to rather than a duplicate of any monetary damages awarded on the state Law claims. Under §1983 Calton cannot obtain money damages from any of the defendants sued herein. The defendant Judges are immune from damage suits. See Stumps v Sparkman 435 U.S. 339 (1978) and Calton cannot recover damages from Schiller under §1983 because 42 U.S.C. 1997e(e) precludes prisoners from bringing §1983 claims for money damages without a prior showing of physical injury. Texas Law does not allow a damage remedy for constitutional torts. See City of Beaumont v Bouillion 896 Sw2d 143, 149 (Tex 1995). Calton's inability to obtain relief under habeas corpus in state or federal court also supports his contention that he is entitled to civil relief. Cf. Harris v State 818 Sw2d 231, 233 (Tex App San Antonio 1991 no pet)(Noting ability to obtain post-conviction habeas corpus relief is factor to consider in granting abatement under Rule 2(b)); Bowler v State 822 Sw2d 334, 335 (Tex. App San Antonio, pet ref'd)(Same).

Although Calton did not learn of the fact that his direct appeal was decided on an incomplete and insufficient record until 4-13-12. See CR. Vol 1 "8th" at p.205 and "9th" at p.468. His receipt of Schiller's response dated 3-29-12 to Calton's complaint constitutes newly discovered evidence. See Id "8th" at p.281-282 and "9th" at p.545-546. It does not meet the standard of 28 U.S.C. § 2244 (b)(2)(B) and (b)(3)(C) and Calton could not obtain leave from the Fifth circuit to file a successive federal writ of any kind. See CR. Vol.1 "8th" at p.360-361 and "9th" at p.625-626. And it is apparent that the abuse of writ order entered against Calton has left the Court of criminal Appeals with the impression that Calton has waived and/or abandoned any contention he may have in regard to his attempted murder conviction. See Id at "8th" at p.362 and "9th" at p.627. Also see Middaugh v State 683 Sw2d 713, 714 (Tex. Crim. App 1985)(Holding Just as one may abuse the writ of Habeas Corpus Middaugh has waived and abandoned any contention he might have in regard to the instant conviction) or in the alternative the court may be relying on its precedent that holds the writ cannot be invoked for mere statutory irregularities in the proceedings below. See Ex parte Sadberry 864 Sw2d 541, 542 (Tex crim App 1993). Further

Appellant's Opening Brief page 38 of 50

the great writ should not be used to litigate matters that should have been raised on direct appeal. See Ex parte Banks 769 sw2d 539, 540 (Tex Crim App 1989). Calton's claim for schiller's incompetence amounts to a violation of T.R.A.P. 34.6 (E). which must be raised on appeal. See e.g. Routier V State 112 sw3d 554, 570-71 (Tex Crim App 2003); Jimenez v State 307 sw3d 325, 333, 334 (Tex App. San Antonio 2009). However when Appellate Counsel Barry Alford consulted with schiller. schiller misled Alford and Calton which precluded the issue from being raised on appeal in the instant case. see CR vol.1 "8th" at p. 276, 279, 281" and "9th" at p. 541, 543, 545. T.R.A.P. 34.6(f) is a state statute and the court has recognized that a violation of a state statute in general is not a cognizable claim on habeas. See Ex parte Owenby 749 sw2d 880, 881 (Tex Crim App 1988) (violation of Article 32. A02, the speedy Trial Act, is nonjurisdictional defect); Ex parte Tovar 901 sw2d 484, 486 (Tex Crim App 1985) (violation of Art. 26.13 not cognizable unless it affected defendant's decision to plead guilty)

To satisfy the second element of the injunction standard Calton must demonstrate that if he is denied an injunction, irreparable harm will result. See Holland Am Ins. Co. V Succession of Roy 777 F2d 992, 997 (5th Cir 1985). In general harm is irreparable where there is no adequate remedy at law such as monetary damages. See Deerfield Med Ctr. v City of Deerfield Beach 661 F2d 328, 338 (5th Cir Unit B 1981). Calton's inability to raise the Brady violation and Right To speedy Trial Violation claim on appeal that are memorialized in the pretrial records that were omitted from the record on appeal. Has resulted in the excessive delay and substantial retardation of appeal approaching twelve years and counting. Since Calton timely filed his notice of Appeal on 5-20-04. see CR Vol.1 "8th" at p. 273 and "9th" at p. 538. As a matter of law, the continuing deprivation of constitutional rights constitute irreparable harm. see Elrod v Burns 427 u.s. 347, 373 (1976). In Rheuark v Shaw 628 F2d 297, 302 (5th Cir 1980), a civil Rights Action, the Fifth Circuit recognized that a state could violate due process if it substantially delayed the appellate process it provided for convicted criminal defendants. Also see Mathis v Hood 937 F2d 790, 794 (2nd Cir 1991) (with respect to whether a given delay constitutes, a due process violation, we noted that the analytical framework set forth in Barker v wingo 407 u.s. 514 is

generally applicable. We ruled appellate delays of 6-10 years excessive) Further in the Ninth Amended Calton has pled and proven the continuing, present adverse effects i.e. the ongoing delay and substantial retardation of a meaningful appeal. See CR Vol.1 "9Th" at p. 510-512. The general purpose of injunctive relief is to halt wrongful acts that are threatened or in the course of accomplishment, rather than to grant relief against past actionable wrongs or to prevent the commission of wrongs not imminently threatened). See Texas Health Care Info. Coun. V Seton Health Plan. Inc 94 SW3d 841, 853 (Tex. App. Austin 2002). Although it is undisputed that a wrongful act has occured in the past. Due to the fact that because Schiller filed an inadequate record. Calton was not afforded a meaningful appeal and said appeal was unconstitutionally resolved. See CR. Vol.1 "8Th" at p. 281-282, 285-287 and "9Th" at p. 545-546, 549-551. Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects. See O'shea v Littleton 414 U.S. 488 495-96 (1974). In the instant case the harm, is not merely imminent, it is actual and ongoing. See NMTC Corp v Canarroe 99 SW3d 865, 869 (Tex. App. Beaumont 2003) (Court noting the harm is more than imminent it was actual and ongoing).

For over a century the Supreme Court has allowed suits against state officials for prospective injunctive relief to end a continuing violation of federal law under the doctrine of Ex Parte Young 209 U.S. 123 (1908) Calton will continue to suffer harm until he is provided a complete and sufficient record and new appeal to utilize said records to raise to viable Constitution dimension claims. In not all cases, where the petitioner fails to show irreparable injury will he still be denied a permanent injunction. See Lewis v Baune 534 F2d 1115, 1123 (5th Cir 1976). where as the essential finding that must be made to issue a Preliminary Injunction is irreparable injury, the essential prerequisite to permanent injunction is the unavailability of an adequate remedy at law. Id at 1124. Often times the concepts of "Irreparable Injury" and "No Adequate Remedy At Law" are indistinguishable. The Court in Bannercraft Clothing Co. v Renegotiation Board 466 F2d 345 ( D.C. Cir 1972), rev'd 415 U.S. 1 (1974) acknowledged the frequent indistinguishability but

went on to say that the irreparable injury rubric is intended to describe the quality or severity of the harm necessary to trigger equitable intervention. In contrast, the inadequate remedy looks to the possibilities of alternative modes of relief, however severe the initial injury. Id at 356 n.9.

Calton will undisputedly prevail on the merits on his §1983 claims. Because Calton had a statutory and constitutional right to a complete and sufficient record at state expense as an indigent appellant. See Griffin v Illinois 351 U.S. 12 (1956); Ex parte Trainer 181 sw3d 358, 359 (Tex. Crim App. 2005) Also see Calton's motion For A Free Record and court's order granting the same. See CR Vol 1 "8th" at p. 274-275 and "9th" at p. 539-540. The Texas Constitution grants a right to appeal to all civil and criminal litigants. See Nelson v Krusen 678 sw2d 918, 921 (Tex 1984). Due process requires that, once the state, once the state has created the right of appeal, it must, "offer each defendant a fair opportunity to obtain an adjudication on the merits of his appeal. See Evitts v Lucey 105 S.Ct 830, 841 (1985). The constitutional touch-stone is that the appellate procedure must furnish the components necessary for meaningful review. A state would deny a defendant such a "fair opportunity" if it reduced the appeal to a meaningless ritual" by denying him the means to effectively press his appellate arguments. See Draper v washington 372 U.S. 487, 496 (1963) (Indigent's Right to a sufficient transcript). Therefore in all cases the duty of the state is to provide indigents as adequate and effective an appellate review as that given appellants with funds. Id at 496. In terms of a trial record, this means that the state must afford the indigent a "a record of sufficient completeness" to permit considerations of his claims. Id at 499. As the Supreme Court held in mayer v City of chicago 404 U.S. 189, 198 (1971) Calton cannot be denied a "record of sufficient completeness" to permit him proper consideration of his Right to speedy Trial Violation and Brady Violation claims. Id at 198. In Draper v washington the supreme Court made clear that calton's Right To speedy Trial Violation claim is the type of claim that requires provision of verbatim transcript. See Draper 372 U.S. at 497.

The threat of harm to Calton outweighs any harm that might result to Schiller by a permanent injunction. Calton's direct appeal did not comport with the demands of the 14th Amendment. Because Schiller filed an incomplete and insufficient record. In deciding whether to grant an injunction, courts ask whether the suffering of the moving party if relief is denied will outweigh the suffering of the non-movant party if relief is granted. The Relief that Calton seeks is essentially an order compelling Schiller to provide Calton a complete and sufficient record and a new appeal to utilize said record be afforded to Calton. Thus relief Calton seeks is merely a preexisting duty under the U.S. Constitution. See Evitts v Lucey, supra; Griffin v Illinois, supra; Draper v Washington, supra. The proposed relief is narrowly tailored to remedy the ongoing violation of Calton's constitutional rights and to prevent the occurrence of irreparable in the future. See 18 U.S.C. § 3626 (a). It will not cause Schiller any real harm.

As a general matter, the "public interest is always well served by protecting the constitutional rights of all its members". See Reinert v Haas 585 F.supp 477, 481 (S.D. Iowa 1984); Spartacus Youth League v Board of Trustees 502 F.supp 789, 804 (N.D. Ill 1980) (finding that "the ultimate public interest lies in the protection of the constitutional rights which Plaintiff assert") The public interest is not served by Calton being denied his constitutional right to a complete and sufficient Transcript and his right to a meaningful appeal. The 14th Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal adequate and effective. See Griffin 351 U.S. at 20. The Supreme Court has stated that it is a criminal defendant's access to the record that makes any appellate review meaningful. See Gardner v California 353 U.S 367, 368 (1969). The undisputed facts confirm Calton's § 1983 claims are civilly actionable. Due to the exceptional and extraordinary circumstances showing the complete failure of the system. Calton has been barred out of court in an attempt to rectify Schiller's malfeascance. Irrespective of the fact that the matters involved herein may be considered failed collateral attacks on Calton's Direct Appeal and Conviction. However there has never been a review on the merits on this issue. With the exception of being unreasonable resolved by Judge Robert Gill relying on Schiller's mis—

representation as the truth of the matter. See CR. Vol.1 "8th" at p. 355-357 and "9th" at p. 620-622. On 3-29-12 Schiller recants those false facts relied on by Judge Gill. See Id "8th" at p. 281-282 and "9th" at p. 445-446. Thus the instant case is distinguished from Kennedy v Staples 336 Sw3d 745, 753-54 (Tex. App. Texarkana 2011) (Court stating these matters are involved with Kennedy's failed collateral attacks on his conviction and are not civilly actionable, absent extraordinary circumstances showing a complete failure of the system).

Because Calton unlike "Kennedy" is not merely discontent because his direct appeal affirmed the trial court's judgment on an incomplete record prepared by an incompetent court reporter. Calton is discontent and the evidence establishes that he was denied a meaningful appeal to no fault of his own. Id at 754 (stating Kennedy is discontent he has not been found innocent. He has alleged nothing that would justify civil relief). The fault is to be solely attributed to Schiller the court reporter whose material misrepresentation to Calton prevented Calton from raising two viable constitutional dimensional claims. See CR. Vol.1 "8th" at p. 215-222 and "9th" at p. 478-485. Because the records memorializing said claims were omitted from the record on appeal. Although the records were timely requested and diligently sought by Calton. See CR Vol.1 "8th" at p. 204-205, 281-282, 285-287 and "9th" at p. 467-468, 545-546, 449-551. The instant case involves Government-State officials material misrepresentation to the defense. which foiled Calton's appeal. Thus this court can reasonably conclude that extraordinary circumstances exist as well as the complete failure of the system has been shown by Calton. Sustaining Calton is entitle to civil relief. with an equitable order to be issued enjoining that Calton be provided a complete and sufficient record. That will afford Calton the opportunity to press his Brady Violation and Right To Speedy Trial Violation claims and an out-of-time Appeal to raise these claims on appeal now. That Calton wished to raise at the time in question but the factual basis to do so was unavailable until 3-29-12. when Schiller admitted he made a mistake. see CR. Vol.1 "8th" at p. 281-282 and "9th" at p. 545-546. Cf. Hudson v Whitley 979 F2d 1058, 1065 (5th Cir 1995) (stating crucial factors external to the defense "the reasonable unavailability of the factual basis of the claim" As well as "Government Interference" (By States Non-Feascanse) prevented from discovery of the claim

(y he now raises). Every tribunal Calton has sought relief. Whether under the "Omission of The Records Theory" where Calton sought an out-of-time Appeal in both state and federal court or under "The Lost and/or Destruction of The Records Theory" where Calton sought a new trial in both state and Federal Court under habeas corpus has denied relief on procedural grounds or refuses to take any action on the petitions. See Ex parte Allen "F" Calton WR. 65,590-14 thru WR 65,590-17 in the Court of Criminal Appeals. Also see Calton v Stephens Civil Actions No. 4:13-CV-378, 4:13-CV-592, 4:13-CV-885 and 4:14-CV-139 in the U.S.D.C. Fortworth Division. Also see C.R. Vol.1 "8th" at p. 360-362 and "9Th" at 625-627.

In the Court below there was a plea to Jurisdiction filed by the Attorney General Id at p. 9-13. Contending Calton's action was a collateral attack on a prior judgment. Id at p.11. And both Judge Donald Cosby before recusing himself Id at 58-59 and Judge Susan McCoy determined their courts lacked Jurisdiction. Id at p.40 and 450 respectively. Also see Id at p.453 where Judge McCoy noted on the docket sheet that the court's lack of Jurisdiction is why she granted Schiller's motion To Dismiss on 6-1-15. Id at 450. Calton has no other adequate remedy at law confirming the complete failure of the system in light of the undisputed facts of the instant case mandating civil relief. To rectify the Failing of Calton's Appeal as a result of a government official's incompetence. Principles of equity governs forms of injunctive relief and the absence of an adequate remedy of law is essential. See C.H. Leavell and Company V Leavell Company 570 SW2d 404 (Tex. Civ. App El Paso 1978, no writ) A request for injunctive relief invokes a court's equity Jurisdiction. See Ex Parte Hughes 129 SW2d 270, 273 (1939). Once a constitutional violation has been found, courts have Broad powers to fashion a remedy. Cf. Swann v Charlotte-Mecklenberg Bd of Educ 402 U.S. 1, 15-16 (1976). In the instant case Calton has met the burden of proof that shows equity demands civil relief be granted to him as a matter of law and as a matter of fact. Further Calton has met the standard to obtain civil Relief as explained by "Chief Justice Morris" see generally Kennedy V Staples, supra.

## Appellant's Fifth Point Of Error

The trial court erred by not reopening the case to consider Calton's claims in light of the Ninth Amended complaint that was timely filed pursuant to the prison mailbox Rule and due to Calton sought leave to amend and there was no showing of surprise or prejudice

## Standard Of Review

The Standard of Review of a Trial Court's pretrial order or in the instant case a lack thereof is abuse of discretion. See Johnson 700 sw2d at 917.

## Argument

The trial court abused its discretion by refusing to reconsider its Judgment in light of Calton's Ninth Amended Complaint that was filed on 5-29-15 pursuant to the prison mailbox rule. The Supreme Court created a special rule for prisoners who file papers by mail. See Houston v Lack 487 U.S 266, 274-76 (1980). A Pro se prisoner's papers are deemed filed when they are turned over to prison officials. See Warner v Glass 135 sw3d 681, 684 (Tex 2004) and Id at 686 and cases cited. It is undisputed that Calton turned his Ninth Amended Complaint over to prison officials on 5-29-15. See CR Vol.1 "9th" at p.536 and Id at 666-667. As this proof makes clear Calton turned the Ninth Amended Complaint over to prison officials on 5-29-15. see Id at p.536. This sworn declaration stating the filing state of 5-29-15 shifted the burden to schiller to prove the complaint untimely filing. see Caldwell v Amend 30 F3d 1199, 1203 (9th Cir 1994). Further if the trial court had a question concerning the timeliness of the filing of said complaint. Then the court should have conducted an evidentiary hearing to permit the court to make a factual finding to the contrary upon a sufficient evidentiary showing by the opposing party. See Faile v Upsohn Co. 988 F2d 985, 989 (9th Cir 1993). Since the trial court did not it must have accepted Calton's allegation of the 5-29-15 filing date as true. Id at 989. Thus the 5-29-15 filing date was two days before the trial court issued its order dismissing Calton's claims against Schiller. see CR vol.1 p.450. For reasons unbeknownst to Calton the Ninth Complaint was not filed marked until 6-15-15. See CR Vol.1 p.457. Thus in all probability said complaint was not considered by the court on 6-1-15 or at all for that matter. The issue is preserved for appellate review in light of Calton's objection to the court filed and forwarded to the court on 7-9-15. see CR. vol.1 p673-674. The motion was brought to the Court's attention by Calton's demand

Appellant's opening Brief page 45 of 50

letter forwarded to the court demanding the court to rule on said motion See 2nd. Supp. CR vol. p.19-20. The issue was brought to the court's attention, the court refused to rule and Calton objected to the court's refusal and preserved the issue for appeal. See TRAP 33.1; Bryant v Jeter 341 SW3d 447, 449-50 (Tex. App Dallas 2011 no. pet)

Assuming arguendo that motion To Dismiss hearing held on 6-1-15 was a trial. would make it necessary for Calton to seek leave to amend his complaint on 5-29-15. which is why Calton prepared His motion for Leave to amend his pleading and forwarded the same to the court on 6-15-15. See 2nd supp. CR vol. 1 p. 11-18. Cf. Goswami v metropolitan Sav and Loan Ass'n 751 sw2d 487, 490 (Tex 1988) (court characterizing Summary Judgment hearing as Trial for purposes of Tex. R. Civ. P. 63). Calton sought leave of court to file his Ninth Amended complaint as soon as he became aware of the fact leave was needed. which was on 6-15-15 which is the date Calton received the 6-1-15 order dismissing his claims against schiller. See 2nd supp. CR. Vol p. 12. This court should take judicial notice that the facts contained in the motion To Amend are sworn to under the penalty of perjury. Id at 17. Thus Calton's 6-15-15 receipt date of the 6-1-15 order is factual and undisputed. Distinguishing the instant case from "Guereque" is Calton can claim and this court should sustain that the trial court abused its discretion to refuse any consideration of the Ninth Amended Complaint. See Guereque v Thompson 953 sw2d 458, 463 (Tex. App. El Paso 1997) (court stating had Appellant sought leave of court to file the Amended Petition within seven days of summary Judgment hearing, Appellants could well have claimed the court abused its discretion by refusing to consider the amended petition because appellees failed to show surprise or other prejudice). The court went on to state because Appellant's never requested leave of court to file the amended petition, they failed to meet the threshold requirement of Tex. R. Civ. P. 63, and the trial court was within its discretion to refuse any consideration of the amended pleading. Id at 463.

Tex. R. Civ. P. Rule 63 States in pertinent part:

Parties may amend their pleadings, respond to pleadings on file of other parties and file such other pleas as they may desire by filing

such pleadings with the clerk at such time as not to operate as a surprise to the opposite party', provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166e, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party. See Tex.R.Civ.P. 63

Texas Courts have construed the requirements of Rule 63 in favor of the right to amend. See Guereque 953SW2d at 463. Once a party requests leave of court to file an amended pleading within seven days of trial, the court has no discretion to refuse the amended pleading unless the opposing party demonstrates that unfair surprise would result, or unless the amended pleading contains a new cause of action or defense, which can be considered prejudicial on its face. See Chapin and Chapin v Texas Sand and Gravel Co. Inc 844 SW2d 664, 665 (Tex 1992). Even where a new cause of action or defense renders the amended pleading facially prejudicial to the opposing party, case law suggests that the opposing party must object to the amended pleading on the basis that a substantive change has been made. See Hardin v Hardin 597 SW2d 347, 349-50 (Tex 1980)

Schiller did not move to strike, make an objection nor show surprise. The trial court did not issue an order striking the Ninth Amended Complaint. The burden of showing surprise or prejudice is on the party resisting amendment. Id at 349. Thus Schiller has waived and/or failed to meet his burden. Cf America Petrofina, Inc v Allen 887 SW2d 829, 831 (Tex 1994) (holding defendants failed to meet burden to plead to prove limitation because they presented no summary judgment proof that they were prejudiced by plaintiff's renaming, omission and renaming of a plaintiff in the petition) A pleading asserting a new cause of action does not make it prejudicial as a matter of law to the opposing party. See State Bar of Texas v Kilpatrick 874 SW2d 656, 658 (Tex 1995). The pleading must be evaluated in the context of the record of the entire case Id at 658-59. The trial courts error is compounded due to the amendment invested Calton's claim that his right to a speedy Appeal was violated. The Ninth Amended Complaint contained the Barker v Wingo 407 U.S. 514 (1972) factors necessary

to sustain this legal theory. See said Complaint CR vol.1 p.510-512 paragraphs 138-142. Notwithstanding the liberality courts view Pro se pleadings. Unrepresented Plaintiff's are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. see Taylor v Books A million, Inc 296 F3d 376, 378 (5th Cir 2002); Also see Rheuark v Shaw 628 F2d 297, 302 (5th Cir 1980) (due process can be denied by any substantial retardation of the Appellate process including an excessive delay in furnishing the transcripts of testimony necessary for the completion of an appellate record). The court went on to hold that the Barker factors are preferred since the reasons for construing appellate delays analogous to motives under pinning the sixth Amendment Right to A speedy Trial Id at 304.

Further because it was mandatory for Calton's pleadings to reflect that his action was for prospective injunctive relief and not merely complaints of past conduct to entitle Calton to injunctive relief. Calton sued Schiller under §1983 for three distinct claims ie. (1) For failing to prepare and file a complete record, (2) Calton's appeal being resolved on that incomplete record and (3) for the substantial delay of a meaningful Appeal. See CR vol.1 "8Th" at p.194, 254-256 and "9Th" at p.457, 519-521. Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects. See O'Shea 414 U.S at 495-96. The ongoing substantial retardation of a meaningful appeal continues and is approaching twelve years since Calton submitted his timely notice of Appeal on 5-20-04. See CR vol.1 "8Th" at p.273 and "9Th" at p.538. And thus Calton's Rights under the Fourteenth Amendment are continuing to be violated for want of a meaningful Appeal. See Mathis 937 F2d at 794 (we have ruled Appellate delays of 6-10 years excessive). The factual allegations in the Ninth Amended Complaint sustain there is the continuing, present adverse effects necessary to warrant injunctive relief. See CR vol.1 "9Th" at p 510-512 paragraphs 138-142. The instant case is readily distinguishable from "Domizio" and this Court can reasonably determine and conclude that leave should have been granted and the court should have reconsidered its judgment in light of the ninth Amended Complaint. Because Calton sought leave to amend the same.

See Domizio V Progressive County Mut. Ins. Co. 54SW3d 867,876 (Tex App. Austin 2000, pet den) (determining that where the trial Court did not consider amended pleading and leave to file was not requested, amended pleading was not timely filed and appellate court would not conclude that leave should have been granted). Finally although Calton sought both leave to amend and supplement his pleadings with the Ninth Amended Complaint and supplement to the Ninth Amended Complaint. See 2nd Supp CR vol.1 p.11-17. And Calton may not have been entitle to supplement his pleadings with the supplement to the Ninth Amended Complaint. See 2nd Supp CR vol.1. p.7-8. Irrespective of that fact Calton was undisputedly allowed to Amend his complaint. Thus the trial Court could have continued the practice of tailoring Calton's proposed orders to its liking and could have crossed out the word supplement in said order. See Id 2nd Supp. CR vol.1 p.18. Also see e.g. orders at CR vol.1. p.163,164,165, 448,449 and 632. The trial erred by denying leave to amend and for failing to reconsider its Judgment in light of the timely filed Ninth Amended Complaint.

## Appellant's Sixth Point of Error

The Trial Court erred in granting the Defendant Judges motion To Dismiss for Lack of Subject matter Jurisdiction.

### Standard of Review

An Appellate Court's review of a trial court's ruling on a plea to the Jurisdiction is de Novo. See State Dept of Hwys and Pub Transp V Gonzalez 82 SW3d 322,327 (Tex 2002)

### Argument

Judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in a Judicial Capacity. See Pulliam V Allen 466 U.S. 522,542-44 (1984). Calton merely sought injunctive

relief from the judges. See CR vol.1 "8th" 195-196 and "9th" at p. 458-459. A plaintiff may stand on his Pleadings in the face of a plea to jurisdiction unless and until a court determines that the plea is meritorious. See County of Cameron v Brown 80SW3d 549,559 (Tex 2002). In light of the court's order determining that the judges plea was meritorious. See CR vol.1 p.40 Calton is entitled to a remand to Amend his pleading. See Texas A and M Univ Sys. v Koseoglue 233 SW3d 835,835 (Tex 2007).

## PRAYER

Wherefore, premises considered, Calton respectfully prays and moves this court to overrule the trial court orders dismissing Calton's claims against Defendants sued herein and order the cause be reversed and remanded and the trial be ordered to appoint counsel. Calton further moves the court for a remand to afford Calton an opportunity to Amend his pleading. Calton further moves this court to order the trial court to issue a preliminary injunction and issue an equitable order that enjoins defendants and those that act in privity with them to provide Calton a complete and sufficient record record and out-of-time appeal to utilize said record. Finally Calton moves for any and all other relief he may just be entitle to generally, by law and equity, whether general or special he may be entitle to under his pleadings and the evidence in support thereof.

Respectfully Submitted,
Allen "F" Calton

### Certificate of service

I, Allen "F" Calton # 1123880 incarcerated at Stiles unit, in Jefferson County, Tx. hereby certify under penalty of perjury the foregoing was turned over to prison officials by depositing by same in the prison mailbox in a postage prepaid envelope addressed to the sixth District Court of Appeals 100 North State Line Avenue # 20, Texarkana, TX. 75501 Certified mail Label # 7015 1520 0000 4173 9300 and First class mail to Appellees Attorney Demetri Anastisiadis 300 W. 15 st, Austin, TX. 78701 on 11-18-15.
Executed on 11-18-15 Allen "F" Calton